Certiorari Denied, December 23, 2009, No. 32,074
Certiorari Denied, January 6, 2010, No. 32,071

IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2010-NMCA-018

Filing Date: October 20, 2009

Docket No. 28,138

STATE OF NEW MEXICO,

     Plaintiff-Appellee,

v.

TERRY WILSON,

     Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Denise Barela Shepherd, District Judge

Gary K. King, Attorney General
Santa Fe, NM
Max Shepherd, Assistant Attorney General
Albuquerque, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Mary A. Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## OPINION

**SUTIN, Judge.**

**{1}**    Defendant appeals his convictions for trafficking a controlled substance (cocaine) and conspiracy to traffic cocaine within a drug-free school zone. We address whether there was sufficient evidence to support his conspiracy conviction and whether he was denied his right to a

1

speedy trial. To resolve this appeal, we address a question we declined to reach in *State v. Montes*, 2007-NMCA-083, 142 N.M. 221, 164 P.3d 102, which is whether the term "knowingly" in NMSA 1978, § 30-31-20(C) (1990) (amended 2006), requires the State to prove knowledge of the drug-free school zone as an essential element of distributing drugs in a drug-free school zone. We conclude that knowledge is an essential element and that the evidence was insufficient to support Defendant's conspiracy conviction. Accordingly, we remand for entry of judgment and resentencing on the lesser offense of conspiracy to traffic cocaine. We reject Defendant's speedy trial claim and affirm his conviction for trafficking a controlled substance.

## BACKGROUND

**{2}**     On March 9, 2006, at 5:40 p.m., Albuquerque Police Department Detectives Sallee and Riley were patrolling the area near Zuni Road and Louisiana Boulevard seeking to make undercover street-level drug buys. They saw Defendant walking southbound down Indiana Street, made eye contact with him, and pulled into the parking lot of an apartment complex at 429 Indiana Street. Defendant asked them what they wanted, and Detective Sallee asked "Can you get a stone? Or a [forty] even better." Defendant said he was on his way to "pick up down the street." While the detectives waited, Defendant walked southbound until he met up with another individual, Mr. Hightower, just north of the intersection of Indiana Street and Bell Avenue. After a conversation, Defendant and Mr. Hightower returned to the detectives' car.

**{3}**     Mr. Hightower and Defendant approached the passenger side of the car and Mr. Hightower negotiated a drug deal with the detectives. He said he had thirty dollars worth of cocaine, but would sell it to them for twenty if they would let him "pinch a little bit." Detective Sallee explained during his testimony that "pinching" means "we'd let him take a little piece off and smoke it together or take a piece off[] so he could smoke it." The detectives agreed, and Detective Riley gave Mr. Hightower and Defendant each a twenty dollar bill. Detective Sallee told Detective Riley he had given them too much money, whereupon Defendant gave his twenty back. Mr. Hightower gave the cocaine to Detective Riley, and Defendant and Mr. Hightower got into the back seat. The detectives gave the arrest signal, and the arrest team arrived and arrested Defendant and Mr. Hightower.

**{4}**     At the time, neither detective realized or knew that the transaction might have occurred in a drug-free school zone. Defendant was originally charged with trafficking cocaine and conspiracy to traffic cocaine. It was only later that the investigator at the District Attorney's Office, utilizing a computer program designed to determine whether a location falls within one thousand feet of a school, typed in 429 Indiana Street and realized that the transaction had occurred within a drug-free school zone. The investigator later conducted measurements establishing that the drug transaction occurred 893 feet from Emerson Elementary School, which was located at the end of the street. When Defendant was indicted, he was charged with trafficking cocaine while within a drug-free school zone and conspiracy to traffic while within a drug-free school zone.

**{5}**     The jury did not convict Defendant of trafficking cocaine within a drug-free school zone. Instead, the jury selected the lesser, generic offense of trafficking cocaine. It did, however, convict him of conspiracy to traffic cocaine while within a drug-free school zone.

## DISCUSSION

## I.  Sufficiency of Evidence

## A.  Trafficking In a Drug-Free School Zone

**{6}**  Defendant argues that the evidence was insufficient to support his conviction for conspiracy to traffic drugs within a drug-free school zone because the evidence did not establish that he was aware of or intended to traffic within a drug-free school zone.  Before reviewing the evidence in this case, we examine the statutory framework to determine the elements that the State must prove.  Trafficking a controlled substance consists of intentionally trafficking.  *See* § 30-31-20(B).  In addition to trafficking a controlled substance, the Legislature also created an additional offense for trafficking drugs while within a drug-free school zone.  *See* § 30-31-20(C).  Section 30-31-20(C) states:  "A person who knowingly violates Subsection [(B)] of this section within a drug-free school zone excluding private property residentially zoned or used primarily as a residence is guilty of a first degree felony."  A drug-free school zone was defined in the applicable 2005 version as "a public school or property that is used for public school purposes and the area within one thousand feet of the school property line, but it does not mean any post-secondary school."  NMSA 1978, § 30-31-2(Y) (2005) (amended 2006, 2008, and 2009); 2005 N.M. Laws, ch. 152, § 9.

**{7}**  We next examine whether the State must prove knowledge when it seeks a conviction for selling drugs within a drug-free school zone.  In *Montes*, 2007-NMCA-083, ¶ 34, this Court stated, "If [the d]efendant intended to argue that knowledge or intent of the location of transfer is an essential element of principal liability for this enhanced crime and that the jury should have been instructed accordingly, he has not clearly made that argument on appeal, and he did not make that argument below."  We recognized that the statute contained the word "knowingly," but did not reach the meaning of that term.  *Id.*  Consequently, we left "for another day the question whether the crime of distribution in a drug-free school zone requires a mental state regarding the location of distribution."  *Id.*  To support the defendant's conspiracy conviction, we reviewed the evidence to determine whether there was evidence that the defendant intended that the transfer occur in a drug-free school zone and found there was sufficient evidence.  *Id.* ¶ 38.

**{8}**  In this case, however, the argument concerning knowledge was preserved.  Defendant asked the court to dismiss the drug-free school zone conspiracy count, arguing that the statutory definition required that a person must knowingly conspire to act within a drug-free school zone.  Defendant argued that there was no evidence that he knowingly conspired to traffic within the drug-free school zone and also argued that he had no intent to commit trafficking within a drug-free school zone.  In response, the State relied on *Montes* to argue that neither knowledge of the drug-free school zone, nor intent to traffic in the zone, were required.  Defendant argued that the issue was not preserved in *Montes,* but that he was "raising that issue now."  The court rejected Defendant's argument, stating that "there isn't an intent requirement included in [S]ubsection [(C)] that he or the offender knowingly or intentionally trafficked in a drug[-]free school zone."  The court expressed that the intent requirement in Subsection B was only in reference to a person who intentionally traffics.

**{9}**  Because the issue of knowledge is squarely presented here, we now consider the issue we declined to reach in *Montes*.  The issue concerns statutory construction so our review is de novo.  *State v. McClendon*, 2001-NMSC-023, ¶ 2, 130 N.M. 551, 28 P.3d 1092.  We begin with the language of the statute to determine legislative intent.  *See State v. Baca*, 2005-NMCA-001, ¶ 9, 136 N.M. 667, 104 P.3d 533 (filed 2004).  "If the language of the statute is clear and unambiguous, we

3

must give effect to that language and refrain from further statutory interpretation." *State v. McWhorter*, 2005-NMCA-133, ¶ 5, 138 N.M. 580, 124 P.3d 215. The statute must be read as a whole, construing each section so as to produce a harmonious whole. *See Baca*, 2005-NMCA-001, ¶ 9.

**{10}** In evaluating the element of knowing conduct, the existence of Defendant's requisite knowledge is an issue of fact. As with other questions concerning the sufficiency of evidence, we view evidence of Defendant's knowledge in the light most favorable to the verdict. *See State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. Then we determine "whether the evidence viewed in this manner could justify a finding by any rational trier of fact that each element of the crime charged has been established beyond a reasonable doubt." *State v. Apodaca*, 118 N.M. 762, 766, 887 P.2d 756, 760 (1994) (internal quotation marks and citation omitted).

**{11}** Trafficking a controlled substance, as defined in Subsection (B), only requires that the act be intentional. Section 30-31-20(B) (stating that "it is unlawful to intentionally traffic"). "Intentional" refers to general criminal intent, the requirement that a defendant generally intend to commit the act. *See* UJI 14-141 NMRA (stating that "[a] person acts intentionally when he purposely does an act which the law declares to be a crime, even though he may not know that his act is unlawful" (alteration omitted)). Under Subsection (B), commission of the first offense is a second degree felony; subsequent offenses are punished as a first degree felony. *See* § 30-31-20(B).

**{12}** In Subsection (C), the Legislature created an enhanced offense for trafficking drugs within a drug-free school zone. Section 30-31-20(C) provides that "[a] person who *knowingly* violates Subsection [(B)] of this section within a drug-free school zone excluding private property residentially zoned or used primarily as a residence is guilty of a first degree felony." (Emphasis added.) Comparing the two subsections, Subsection (B) requires intentional conduct. "Intentionally" is not the same as "knowingly." *See State v. Hargrove*, 108 N.M. 233, 236, 771 P.2d 166, 169 (1989) (stating that "intentionally" and "knowingly" are separate concepts). By contrast, Subsection (C) incorporates Subsection (B)'s requirement of intentional conduct and adds an additional requirement that the offense be committed "knowingly." We conclude that the Legislature's deliberate selection of the word "knowingly" requires specific knowledge that the offense will occur within the drug-free school zone. *See State v. Baca*, 1997-NMSC-018, ¶ 5, 123 N.M. 124, 934 P.2d 1053 (equating "knowingly" in the forgery statute with requiring knowledge); *Hargrove*, 108 N.M. at 235-36, 771 P.2d at 168-69 (holding that "knowingly," as used in the statute prohibiting incest, includes the requirement that the offender have knowledge that the victim is within the prohibited degree of consanguinity); *Territory v. Cortez*, 15 N.M. 92, 94, 103 P. 264, 264 (1909) (holding that the use of the word "knowingly" made knowledge an element of the crime of knowingly killing or depriving owners of their animals).

**{13}** We are to construe each section so as to produce a harmonious whole. *See Baca*, 2005-NMCA-001, ¶ 9. From reading each part of Section 30-31-20, it is apparent that the Legislature intended to create a hierarchy of criminal culpability depending on where the drug transaction occurred and whether the offender had specific knowledge that he was within the zone of increased culpability. *See State v. Padilla*, 2008-NMSC-006, ¶ 14, 143 N.M. 310, 176 P.3d 299 (noting that the statute prohibiting aggravated fleeing from a police officer "suggests a hierarchy of criminal liability based on the aggravated nature of a defendant's conduct"). The two subsections are distinguished by the heightened knowledge requirement in Subsection (C), and by the fact that a

4

conviction under Subsection (C) is punished more harshly than a first offense under Subsection (B). *Cf. Santillanes v. State*, 115 N.M. 215, 222, 849 P.2d 358, 365 (1993) (stating that when a crime is punishable as a felony, a higher mens rea requirement is appropriate). By using the word "knowingly" the Legislature included an additional knowledge requirement as a prerequisite for conviction of the more severe offense and the imposition of its harsher punishment. To construe Subsection (C) otherwise would read the word "knowingly" out of the statute, which we will not do. *See State v. Javier M.*, 2001-NMSC-030, ¶ 32, 131 N.M. 1, 33 P.3d 1 (stating that the appellate courts are to construe statutes so that no part is rendered superfluous). Interpreting Subsection (C) to include a knowledge requirement gives meaning to all of the words in the statute and produces a sensible and harmonious whole.

**B.      Conspiracy to Traffic In a Drug-free School Zone**

**{14}**    Having defined the meaning of Subsection (C), we next examine the requirements of conspiracy. "Conspiracy consists of knowingly combining with another for the purpose of committing a felony." NMSA 1978, § 30-28-2(A) (1979). The agreement is the gist of conspiracy. *See State v. Baca*, 1997-NMSC-059, ¶ 46, 124 N.M. 333, 950 P.2d 776. "[C]ircumstantial evidence can be used to prove a conspiracy." *State v. Hernandez*, 104 N.M. 268, 278, 720 P.2d 303, 313 (Ct. App. 1986).

**{15}**    To establish conspiracy, the State had to establish beyond a reasonable doubt that Defendant and another person by words or acts agreed together to commit the crime of trafficking drugs, and committing that crime while within a drug-free school zone. UJI 14-2810 NMRA. And, as we have discussed, the State had to prove beyond a reasonable doubt that Defendant, as a conspirator, had the requisite knowledge.

**C.      The Evidence**

**{16}**    The evidence established that Defendant made an agreement with Mr. Hightower, that he shared the purpose of trafficking drugs, and that he intended that the drugs be sold. However, beyond that, one must speculate that Defendant knew that the drugs would be sold in a drug-free school zone. In contrast to *Montes*, in which there was evidence that the defendant knew that the "ultimate purchaser[] . . . was likely waiting at [a] school[,]" there is no evidence that Defendant knew the drug transaction would occur at or near a school. *Montes*, 2007-NMCA-083, ¶ 38. Even the undercover detectives, who were likely aware of the significance of drug-free school zones, did not realize that the case may have involved a drug-free school zone. There exists no evidence that Defendant knew the transaction would occur within a drug-free school zone. The lone fact that the school may have been visible at a distance of 893 feet does not suffice to prove conspiracy to traffic cocaine within a drug-free school zone beyond a reasonable doubt. *See Mariano R.*, 1997-NMCA-018, ¶ 5 (holding that the evidence was insufficient to prove that the conspirator knew that anyone planned to fire a shot from the vehicle and that one would have to impermissibly speculate to uphold the verdict).

**{17}**    The State does not make any argument that the evidence was sufficient to establish knowledge that the transaction would occur in a drug-free school zone. The State expressly concedes that there was insufficient evidence for conviction for conspiring to traffic in a drug-free school zone, but this concession is made based only on a theory of legal impossibility and not on

5

the basis that the evidence was insufficient to prove knowledge. According to the State, the only reason why Defendant could not be convicted of conspiring to sell drugs in a drug-free school zone was that it was legally impossible for Defendant to commit the crime of trafficking in a drug-free school zone because Defendant conspired to sell drugs in a private parking lot—by definition not a drug-free school zone. The defense of legal impossibility has "perplexed our courts and has resulted in many irreconcilable decisions, " *State v. Lopez*, 100 N.M. 405, 407, 671 P.2d 653, 655 (Ct. App. 1983), and "the modern trend in most jurisdictions is to severely limit or abolish the impossibility defense." 1 Paul H. Robinson, *Criminal Law Defenses* § 85(a), at 423, (c) (1984) ("The modern trend, evident in most jurisdictions, is to reject both factual and legal impossibility as defenses."). We decline the State's invitation to follow the road less traveled, especially when the simpler path we choose leads to the same conclusion that the evidence is insufficient.

{18} We emphasize that we decide this case based on its facts. Where distribution in a drug-free school zone is charged, different facts could justify a different result. But in this case the sole fact that the transaction took place 893 feet from a school, with no other evidence, is not sufficient to establish the knowledge element of the crime beyond a reasonable doubt.

### D. Location of Agreement

{19} The jury instruction given in this case suggested that the fact that the agreement between Defendant and Mr. Hightower was made "while within" a drug-free school zone would support a conviction for conspiracy to traffic in a school zone. On appeal, Defendant argues and the State agrees that the location where the agreement is made is not the issue. We accept the State's concession. *See State v. Trujillo*, 2002-NMSC-005, ¶ 33, 131 N.M. 709, 42 P.3d 814; *Montes*, 2007-NMCA-083, ¶¶ 29, 38 (focusing on where the transfer of drugs occurred); *see also State v. Herrera*, 86 N.M. 224, 226, 522 P.2d 76, 78 (1974) (stating that in construing a statute we consider the object of the statute).

{20} We reverse Defendant's conspiracy conviction. However, the question remains whether we should remand for a new trial on this charge or whether we remand for entry of judgment on the lesser charge of conspiracy to traffic. Under *State v. Villa*, 2004-NMSC-031, ¶ 9, 136 N.M. 367, 98 P.3d 1017, we may remand for entry of judgment on the lesser charge if the jury was instructed on it. Because the jury was instructed on conspiracy to traffic, we remand for entry of judgment and resentencing on conspiracy to traffic.

### II. Instructions

{21} Defendant also challenges the relevant elements instruction regarding trafficking while within a drug-free school zone because it did not contain a knowledge requirement as to location. Our reversal on sufficiency grounds makes it unnecessary to address this claim, except to note that the jury instruction lacks any element addressing intent or knowledge as to location and therefore is fundamentally flawed. *See State v. Castro*, 2002-NMCA-093, ¶ 2, 132 N.M. 646, 53 P.3d 413 (stating that "[f]undamental rights of an accused . . . are implicated where the jury . . . [has not] been instructed on an essential element of [the] crime" (second alteration in original) (internal quotation marks and citation omitted)).

### III. Speedy Trial

6

**{22}** To determine whether a defendant's constitutional right to a speedy trial has been violated, we apply the four-factor balancing test set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972). *State v. Garza*, 2009-NMSC-038, ¶ 13, 146 N.M. 499, 212 P.3d 387. The factors are the length of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. *Barker*, 407 U.S. at 530. We give deference to the district court's factual findings. *State v. Maddox*, 2008-NMSC-062, ¶ 8, 145 N.M. 242, 195 P.3d 1254. We review de novo the weighing and balancing of the *Barker* factors and ultimately whether a defendant's speedy trial right was violated. *Maddox*, 2008-NMSC-062, ¶ 8; *State v. O'Neal*, 2009-NMCA-020, ¶ 14, 145 N.M. 604, 203 P.3d 135 (filed 2008).

**{23}** Thus, while deferential to the district court's fact finding, we independently balance the *Barker* factors. *Zurla v. State*, 109 N.M. 640, 642, 789 P.2d 588, 590 (1990). We analyze right-violation claims on a case-by-case basis and examine all four factors in order to weigh the conduct of the prosecution and the defense, with no one factor as talismanic. *State v. Urban*, 2004-NMSC-007, ¶ 11, 135 N.M. 279, 87 P.3d 1061; *see also Garza*, 2009-NMSC-038, ¶¶ 11, 13 (stating that "the substance of the speedy trial right is defined only through an analysis of the peculiar facts and circumstances of each case" and recognizing that "*Barker*'s formulation necessarily compels courts to approach speedy trial cases on an ad hoc basis" (internal quotation marks and citation omitted)).

## A.     Length of Delay

**{24}** Under the length-of-delay factor, we first decide whether the delay is presumptively prejudicial. *Garza*, 2009-NMSC-038, ¶¶ 21-24. A presumptively prejudicial delay is a triggering mechanism that requires further inquiry into each of the four *Barker* factors. *Id.* ¶ 21. In analyzing presumptive prejudice, the district court characterized this as a case of intermediate complexity "based on the facts and circumstances and the fact that there were two codefendants." Although we generally give deference to a district court's characterization of a case's complexity, *see State v. Plouse*, 2003-NMCA-048, ¶ 42, 133 N.M. 495, 64 P.3d 522, we disagree with the court's determination here. Simple cases "require less investigation and tend to involve primarily police officer testimony." *State v. LeFebre*, 2001-NMCA-009, ¶ 11, 130 N.M. 130, 19 P.3d 825. "Cases of intermediate complexity, on the other hand, seem to involve numerous or relatively difficult criminal charges and evidentiary issues, numerous witnesses, expert testimony, and scientific evidence." *State v. Laney*, 2003-NMCA-144, ¶ 14, 134 N.M. 648, 81 P.3d 591. Although this case involved a codefendant, nothing in the record indicates that this circumstance caused any significant complexity. The case involved what appears to have been a not unusual police sting, a discrete event, and the only witnesses of which we are aware from the record were two detectives and an investigator from the District Attorney's Office. In its brief in chief, the State concedes that this was a simple case. However, after reviewing a late-filed transcript of the hearing on Defendant's motion to dismiss, the State argues in a sur-reply that the case was of intermediate complexity, although the State acknowledges that "[t]his case did not present unusually difficult criminal charges or evidentiary issues." We are not persuaded that this is a case of intermediate complexity, and we conclude that it falls in the simple-case category.

**{25}** Defendant's motion to dismiss for a speedy trial violation was filed on July 13, 2007. At that time, the applicable guideline for a presumption of prejudice in a simple case was nine months. *See Maddox*, 2008-NMSC-062, ¶ 9; *see also Garza*, 2009-NMSC-038, ¶¶ 44, 48, 50 (changing the

7

applicable guideline from nine months to one year for cases in which the defendant's motion to dismiss for a speedy trial violation was initiated on or after August 13, 2007). Defendant's motion predated August 13, 2007; therefore, in the present case, a nine-month period of delay is presumptively prejudicial.

**{26}** "In determining the weight to be given to the length of delay, we consider the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *State v. Stock*, 2006-NMCA-140, ¶ 13, 140 N.M. 676, 147 P.3d 885 (internal quotation marks and citation omitted); *see also Garza*, 2009-NMSC-038, ¶ 24 (considering the extent to which the delay crossed over the "bare minimum needed to trigger judicial examination of the claim" (internal quotation marks and citation omitted)).

**{27}** In this case, Defendant was arrested on March 9, 2006, and he was released on his own recognizance on March 22, 2006. On April 26, 2006, he was arrested on an outstanding felony warrant, and on May 9 and May 11, 2006, he was separately indicted on two different residential burglary/larceny charges. Defendant was indicted in the present case on May 30, 2006, and a statement of joinder with Mr. Hightower's case was filed. Defendant was arraigned in this case on June 9, 2006. In his motion to dismiss for violation of his speedy trial right, filed July 13, 2007, Defendant measured delay from his indictment on May 30, 2006. Defendant did not argue in the district court and does not take a definite position on appeal that his right attached when he was arrested.

**{28}** We therefore measure the total lapse of time from Defendant's indictment on May 30, 2006, to the beginning of his trial on August 6, 2007. *See Maddox*, 2008-NMSC-062, ¶ 10 (calculating the length of delay from the point "when the defendant becomes an accused, that is, by a filing of a formal indictment or information or arrest and holding to answer" (internal quotation marks and citation omitted)); *Urban*, 2004-NMSC-007, ¶ 12 (measuring the time from indictment because the defendant "was not held to answer for [the] charges until the time of his indictment").[1]

**{29}** "[T]he greater the delay the more heavily it will potentially weigh against the State." *Garza*, 2009-NMSC-038, ¶ 24. In this case, the extent to which the delay exceeded the bare minimum was just over five months. We cannot say that the extended time of five months in this case was extraordinary, protracted, or otherwise a delay that requires us to weigh the length of delay factor against the State more than slightly. *Cf. id.* ¶¶ 26-27, 30 (referring in the context of the reasons for delay that a more neutral reason such as negligence and administrative delay, including overcrowded dockets, is weighed "less heavily," and the weight to be assigned depends on the length of delay, such as whether it is extraordinary or protracted).

**B.     Reasons for Delay**

---

[1]  We note that our Supreme Court determined in earlier cases that the right was triggered by and the length of delay was measured from the defendant's arrest. *See State v. Coffin*, 1999-NMSC-038, ¶ 56, 128 N.M. 192, 991 P.2d 477; *Salandre v. State*, 111 N.M. 422, 425, 806 P.2d 562, 565 (1991), *holding modified on other grounds by Garza*, 2009-NMSC-038; *Zurla*, 109 N.M. at 642, 789 P.2d at 590.

## 1.    Standards to Analyze This Factor

**{30}**    To analyze the *Barker* reasons-for-delay factor, we first turn to *Garza* and *Maddox*. *Garza* quotes *Barker*'s statement that "[c]losely related to length of delay is the reason the government assigns to justify the delay" and then quotes *Maddox*'s statement that "[t]he reasons for a period of the delay may either heighten or temper the prejudice to the defendant caused by the length of the delay." *Garza*, 2009-NMSC-038, ¶ 25 (internal quotation marks and citation omitted). Thus, the Court in *Garza* concentrated on assessing the government's justification for the length of delay. *See id.* ¶¶ 25-30 (discussing the weight to be assigned for lapses of time based on the government's actions or failures to act toward bringing a defendant to trial).

**{31}**    In its analysis of the reasons for delay, *Garza* repeats the three different types of delay identified in *Barker* and repeats *Barker*'s view that "different weights should be assigned to different reasons." *Garza*, 2009-NMSC-038, ¶ 25 (internal quotation marks and citation omitted). The types are (1) deliberate or intentional delay, (2) negligent or administrative delay, and (3) delay for which there is a valid reason. *Id.* ¶¶ 25-27. The first type, deliberate delay, is to be "weighted heavily against the government." *Id.* ¶ 25 (internal quotation marks and citation omitted). The second type, negligent or administrative delay, is to be "weighted less heavily but nevertheless should be considered" and is assigned a weight based on its protractedness. *Id.* ¶ 26 (internal quotation marks and citation omitted). As to the third type, delay for a valid reason, the appellate court is ultimately to "balance the reasonableness of the manner in which the State has moved a case toward trial against the costs of going forward with a trial whose probative accuracy the passage of time has begun by degrees to throw into question." *Id.* ¶ 27 (internal quotation marks and citation omitted).

**{32}**    The Court in *Garza* prescribed the following measuring scale: "Because the delay was negligent, the extent to which it weighs against the State depends on the length of the delay." *Id.* ¶ 30. To evaluate the length of the delay, the Court did not look solely at the full lapse of time from attachment of the right to a speedy trial it had just evaluated. The Court also looked at the extent to which the delay extended beyond the threshold to trigger the speedy trial inquiry—whether that particular delay was extraordinary or protracted. *Id.* Because the delay extended only slightly beyond the threshold to trigger the speedy trial inquiry, the Court held that the full amount of delay due to negligence was "not extraordinary." *Id.* Then the Court stated, "[a]ccordingly, because the delay was negligent but not protracted, this factor weighs only slightly in [the d]efendant's favor," a phrase that we read to also mean slightly against the State. *Id.*

**{33}**    Because the parties in the present case were involved in plea negotiations during the period between arraignment and trial, we consider the impact of such negotiations on the delay. *Garza* does not specifically address the delay caused by plea negotiations. But *Maddox* does. In *Maddox*, there were intermittent plea negotiations during the total period of delay. 2008-NMSC-062, ¶ 24. The Court opened its discussion with the statement that "[g]enerally, there is no rule attributing delay resulting from attempted plea negotiations to a specific party and absent some act of bad faith or some prejudice to the defendant, plea negotiations are themselves not a factor to be held against either party." *Id.* (internal quotation marks and citation omitted). The Court nevertheless set the following specific standards: "[P]lea negotiations are not an excuse for a delay in the prosecution of a case" and "unsuccessful plea negotiations do not constitute a valid reason for suspending the defendant's right to a speedy trial." *Id.* ¶ 25. The Court further stated that "the State is not excused in its burden to timely try a defendant while waiting for defense counsel to respond to a plea offer"

and that "the State must affirmatively seek to move the case to trial, even while plea negotiations are pending." *Id.* ¶ 26. The Court in *Maddox* indicated that it would "weigh unreasonable periods of delay against the State," but that the time during which a defendant does not timely respond to plea offers will weigh "only slightly against the State." *Id.* Taking these various *Maddox* standards into consideration, we read *Maddox* to require the delay from plea negotiations to be weighed against the State when there exist measurable periods of negotiation.[2] How heavily the delay is to be weighed depends on the length of that delay and the amount of delay caused by a defendant in failing to timely respond to a plea offer.

{34} Of course, there may exist periods of time during a case where it moves "toward trial with customary promptness." *Id.* ¶ 27. That period of time is to be weighed "neutrally between the parties." *Id.* Along the same line, *Garza* quotes *Doggett v. United States*, 505 U.S. 647, 656-57 (1992), as saying, "Our speedy trial standards recognize that pretrial delay is often both inevitable and wholly justifiable" and refers to *Doggett*'s view that there are "acceptable and unacceptable reasons for delaying a criminal prosecution." *Garza*, 2009-NMSC-038, ¶¶ 26-27 (internal quotation marks and citations omitted). Combining *Maddox* and *Garza*, it seems clear that certain periods of time during a case which the State can demonstrate are "inevitable" or periods during which the case is moved "toward trial with customary promptness" are not to be weighed against the State.

## 2. The Time Lapses Segmented

{35} Following Defendant's June 9, 2006, arraignment, after two pretrial settings in September and October, the district court set November 6, 2006, for a guilty plea and pretrial conference. It appears that it was at some point early in this time frame that Mr. Hightower's and Defendant's cases were joined. A stipulated extension of time to March 9, 2007, was filed December 1, 2006, and was granted on December 4, 2006. On February 6, 2007, the court set a motions deadline for February 23, 2007, and trial for March 5, 2007. On February 21, 2007, the State requested a Supreme Court time extension continuing the March 5, 2007, trial date to September 9, 2007.

{36} During the period of May 30, 2006, to about February 21, 2007, the parties were engaged in plea negotiations on three charges, one related to the present case and two related to other crimes for which Defendant had been separately indicted. The State's February 21, 2007, petition to the Supreme Court for an extension of time appears to have emanated from several circumstances, namely, while Defendant accepted pleas in his other criminal cases he rejected an offered plea in the present case, Mr. Hightower was requesting a trial continuance, and a prosecution witness was unavailable. Defendant objected to this extension request. On February 28, 2007, the Supreme Court granted an extension to September 9, 2007. Noting that pretrial interviews were "ongoing," the district court continued the March 5, 2007, trial setting and noticed trial for April 30, 2007, preceded by an April 17 docket call and an April 20 motions deadline.

---

[2] We note that in *State v. Marquez*, 2001-NMCA-062, ¶ 18, 130 N.M. 651, 29 P.3d 1052, this Court stated that we do not weigh the period of plea negotiations against either party. *See State v. Eskridge*, 1997-NMCA-106, ¶ 15, 124 N.M. 227, 947 P.2d 502 (stating that "plea negotiations are themselves not a factor to be held against either party"). To the extent those holdings are inconsistent with the specific standards set forth in *Maddox*, the cases may be marginalized.

**{37}** On April 26, 2007, the court noticed a pretrial conference for May 21, 2007, and, based on a motion filed by Mr. Hightower, the court on May 22, 2007, noticed trial for August 6, 2007. It appears that the extensions and the April 30 and August 6, 2007, trial settings were primarily to accommodate Mr. Hightower. On July 13, 2007, Defendant filed his motion to dismiss for violation of his speedy trial right. The district court heard this motion on August 2, 2007, and determined that the cases against Defendant and Mr. Hightower should be severed. A severance order was entered on August 7, 2007. Defendant was tried and on August 9, 2007, he was convicted.

### 3.   Evaluation of Lapses of Time

**{38}** The record is not as clear as we would like in regard to the demarcation of the events and conduct causing or contributing to lapses of time. The period from the May 30, 2006, indictment to the June 9, 2006, arraignment was negligible. We note that Defendant was released on his own recognizance on March 22, 2006, and then arrested on an outstanding felony warrant on April 26, 2006. We do not weigh this short period against the State. There was a substantial period at the beginning that included plea negotiations in this case, as well as in Defendant's other felony cases. The negotiations were successful in his other cases, but not in the present case. This was a period of just over eight months from Defendant's June 9, 2006, arraignment until February 21, 2007. A portion of this time was included in the December 1, 2006, stipulated extension of time to March 9, 2007, and appears also to have included some delay based on the joinder of Mr. Hightower's case. For want of well-explained, particularized reasons other than plea negotiations behind the almost six-month lapse of time up to December 1, 2006, we weigh that time slightly against the State. We do not weigh the over three months of the stipulated extension from December 1, 2006, to March 9, 2007, against the State.

**{39}** The trial was reset from March 5, 2007, to April 30, 2007, but that setting was continued so Mr. Hightower could obtain new counsel. The April 30, 2007, setting was vacated, apparently also due to issues related to Mr. Hightower's counsel, and on May 22, 2007, trial was reset for August 6, 2007. In the hearing on Defendant's motion to dismiss, Defendant accused Mr. Hightower of "playing games with the court system." On appeal, Defendant refers to Mr. Hightower's need for new counsel as "misbehavior" and argues that the delay it caused should count against the State because the State refused to sever the cases so that Defendant's case could move forward. The record, however, does not reflect that Defendant filed any motion to sever. The record reflects only that on August 2, 2007, during the hearing on Defendant's motion to dismiss, the court determined that severance was necessary so that Defendant's trial could "definitely go one way or the other." Trial began on August 7 and concluded on August 9, 2007.

**{40}** We are faced with a five-month delay from March 9, 2007 (the final date of the stipulated extension), to August 7, 2007, occasioned principally by Mr. Hightower's continuance requests. This Court has not previously had the opportunity to consider how a delay caused by a codefendant should be evaluated in a speedy trial analysis.

**{41}** This issue presents a tension between the individuals' rights to a speedy trial and the prosecution's interest in conserving trial resources by avoiding multiple trials. *See State v. Littlefield*, 457 So. 2d 558, 559 (Fla. Dist. Ct. App. 1984) (stating that "the trial court can deal with the specific situation and balance the interests of the state in avoiding multiple trials against the interest of the defendant in receiving a speedy trial"). Our research indicates different approaches

11

to the problem. Federal cases decided under the Federal Speedy Trial Act of 1974, 18 U.S.C. §§ 3161-74 (1975, as amended through 2008), apply the general rule that continuances granted to a codefendant are attributable to the defendant, as well. *See, e.g.*, *United States v. Noriega*, 746 F. Supp. 1548, 1559 (S.D. Fla. 1990) (stating that "whatever stops the [s]peedy [t]rial clock for one defendant stops the clock for all codefendants, subject . . . to the requirement that the delay be reasonable"). Federal cases have considered reasonable delays to ensure that a codefendant has counsel as excludable from the defendant's period of delay. *See United States v. Westbrook*, 119 F.3d 1176, 1187-88 (5th Cir. 1997) (holding that an approximate five-month delay caused by the codefendant's continuance to allow trial counsel to prepare and for preparation of transcripts from the first trial was reasonable and did not establish a speedy trial violation); *United States v. Davenport*, 935 F.2d 1223, 1236 (11th Cir. 1991) (holding that a seven-month continuance caused by the codefendants' need for additional time to prepare for trial and for the unavailability of defense counsel was a reasonable delay, attributable to the defendant); *United States v. Fogarty*, 692 F.2d 542, 546 (8th Cir. 1982) (stating that the continuance caused by, in part, one codefendant's counsel's trial conflict was excludable from the period of delay). Our search of the federal approach produced only one case in which a court, faced with more than one year of delay caused by a continuance for a codefendant, noted "rather extreme circumstances" and held that the delay was not reasonable and resulted in a speedy trial violation as to the defendant. *United States v. Jones*, 56 F.3d 581, 584-85 (5th Cir. 1995).

{42}     Another approach, taken in Kentucky, is that where a delay is caused by a codefendant, it is not the fault of the state or the defendant, and therefore is not weighed against either. *See Bratcher v. Commonwealth*, 151 S.W.3d 332, 344 (Ky. 2004) (reasoning that the delay was caused by the codefendant, not the defendant or the state, and therefore should not be charged to either). Other authority holds that delays caused by codefendants are weighed against the state, because the state chose to join the codefendants. *See Ruffin v. United States*, 524 A.2d 685, 688-89 (D.C. 1987) (per curiam) (stating that the government bears some burden for the delay caused by a codefendant's continuances where the government chose to join defendants, but in light of the policy considerations favoring joinder, the delay was not weighed heavily against the government); *Marks v. State*, 578 A.2d 828, 835 (Md. Ct. Spec. App. 1990) (recognizing that delay caused by continuance requested by a codefendant was chargeable to the state because the state elected to try the defendant and codefendant jointly). On the other hand, some cases have held that such continuances are chargeable to the defendant if he did not object. *See Turner v. United States*, 443 A.2d 542, 546 (D.C. 1982) (stating that in the absence of an objection to a codefendant's request for continuance, the defendant's assent would be inferred, and the delay would be chargeable to the defendant); *State v. Shelton*, 281 S.E.2d 684, 689-90 (N.C. Ct. App. 1981) (stating that the delay caused by a continuance to allow a codefendant a mental examination was chargeable to the defendant because he did not object).

{43}     We do not select and set in stone any particular approach. For the purposes of our discussion, we will assume without deciding that reasonable delays caused by codefendants will weigh against the State. In this case, we see no basis on which to weigh delays caused by Mr. Hightower heavily against the State. We are not persuaded by Defendant's argument that the State should have severed the cases once Mr. Hightower's continuance requests surfaced. Defendant places full blame on the State for not severing the cases earlier than August 2, 2007, but Defendant does not demonstrate that he moved for severance at any point. The district court's approach, which was to decide in August to sever when it became apparent that the delay caused by Mr. Hightower

12

would continue, was an appropriate balance of the interests of Defendant and the State. *See State v. White*, 83 N.M. 354, 355, 491 P.2d 1165, 1166 (Ct. App. 1971) (determining that whether a defendant is entitled to a separate trial is a matter to be resolved by the sound discretion of the court); *see also* Rule 5-203(C) NMRA (requiring a defendant to demonstrate prejudice to obtain severance). On this record, we disagree with Defendant's characterization of the case as one in which the State refused to sever the cases. Had Defendant actually moved for severance, this argument might be more persuasive. But with no request by Defendant, the necessity for a severance did not become apparent until August. Rather, the delay was caused primarily by Mr. Hightower. We weigh the approximate five-month delay from March 9 to August 7, 2007, only slightly against the State.

**{44}** To summarize the lapse of time evaluation, there were three major segments: approximately six months, from June 9 to December 1, 2006, weighed only slightly against the State; approximately three months, from December 1, 2006, to March 9, 2007, not weighed against the State; and approximately five months, from March 9 to August 7, 2007, weighed only slightly against the State. Eleven of the fourteen months are weighed against the State, albeit only slightly, primarily because of the absence of well-explained, particularized reasons for delay given by the State other than plea negotations, and because of the extended time spent attending to Mr. Hightower's activities. *See Garza*, 2009-NMSC-038, ¶¶ 25-30 (indicating that under the reasons for delay factor the court analyzes "the reason the government assigns to justify the delay" and concentrating on assessing those justifications). The slightness of weight attributed for these eleven months is appropriate because there exists nothing to indicate particularized fault on the State's part, because some of the delay can be attributed to Defendant's failure to move for a severance, and because a portion of the eleven months must presumably be attributed to reasonable lapses of time inherent in the trial process. *See id.* ¶ 27 (discussing delay for a valid reason); *State v. Valencia*, 2010-NMCA-005, ¶¶ 18, 20, 24, __ N.M. __, __ P.3d __ (No. 28,140, Oct. 2, 2009) (discussing inevitable delay and periods during which a case moves toward trial with customary promptness). The remaining three months are not weighed against the State because Defendant agreed to the delay.

## C.    Assertion of the Right

**{45}** "Generally, we assess the timing of the defendant's assertion and the manner in which the right was asserted. Thus, we accord weight to the 'frequency and force' of the defendant's objections to the delay." *Garza*, 2009-NMSC-038, ¶ 32 (citations omitted). "We also analyze the defendant's actions with regard to the delay." *Id.* "[T]he timeliness and vigor with which the right is asserted may be considered as an indication of whether a defendant was denied needed access to speedy trial over his objection." *Id.*

**{46}** Together with his entry of appearance and request for discovery, Defendant added a pro forma motion for speedy trial on June 16, 2006, seven days after he was arraigned. This was his only request for a speedy trial that preceded his motion to dismiss filed July 13, 2007, about three weeks before the August 6, 2007, trial setting. We weigh this factor slightly in Defendant's favor. *See id.* ¶ 34 (holding that the defendant's single assertion and motion to dismiss filed shortly before trial weighed slightly in the defendant's favor, where it was "tucked within the waiver of arraignment and not guilty plea . . . [and] was not especially vigorous nor was it mitigated, however, by any apparent acquiescence [by the defendant] to the delay"); *Maddox*, 2008-NMSC-062, ¶¶ 29-31

13

(stating that a pro forma demand is generally entitled to relatively little weight, that the defendant's assertion under the Interstate Agreement on Detainers weighed minimally in his favor, and the defendant's attempt to assert the right by a motion to dismiss filed five days before trial was "not timely" and weighed slightly in his favor); *Coffin*, 1999-NMSC-038, ¶ 67 (stating that a second request for a speedy trial, filed two weeks before trial, was not sufficient to weigh the factor in the defendant's favor).

## D.     Prejudice

**{47}** We consider three interests relevant to the prejudice-factor analysis: (1) to prevent oppressive pretrial incarceration, (2) to minimize the accused's anxiety and concern, and (3) to limit the possibility of an impairment to the defense. *Garza*, 2009-NMSC-038, ¶ 35. Defendant has the burden to demonstrate and substantiate prejudice. *Id.* ¶¶ 35-37. We weigh the first two interests in the defendant's favor only where the incarceration or the anxiety suffered is undue. *Id.* ¶ 35.

**{48}** Defendant has made no particularized showing to substantiate prejudice from undue pretrial incarceration or undue anxiety. We will not speculate as to the impact of his pretrial incarceration or the degree of anxiety he suffered. *Id.* Some degree of oppression and anxiety is inherent for every defendant who is jailed while awaiting trial. *Id.* Defendant has not demonstrated that any anxiety and concern he suffered was at all different from the anxiety and concern inherent in being incarcerated, or having been in considerable contact with the criminal justice system over several years.

**{49}** Further, Defendant offered no reason why or how his defense was impaired, except to argue that he lost the opportunity to serve concurrent sentences and that he experienced anxiety and concern. *See Urban*, 2004-NMSC-007, ¶ 19 (stating that the loss of the opportunity to serve concurrent sentences can be cognizable prejudice). We are not persuaded that Defendant was prejudiced to any degree sufficient to give this interest any weight in his favor. Whether his defense might have been impaired to any degree is speculative. *See Maddox*, 2008-NMSC-062, ¶ 35 (determining that the defendant did not suffer undue prejudice from a claimed lost opportunity to serve his sentences concurrently "because it is speculative as to how the district court may choose to exercise its discretion in sentencing"). We do not weigh this factor in Defendant's favor.

## E.     Balancing the Four Factors

**{50}** The approximate five-month delay beyond the presumptive nine-month period is not compelling and weighs only slightly against the State. The reasons-for-the-delay factor weighs only slightly against the State. Defendant's assertion of the right is entitled to relatively little weight favoring Defendant, and he has not shown tangible or particularized prejudice cognizable under the prejudice factor. There exists no evidence of deliberate, extraordinary, or protracted delay on the part of the State. *See Garza*, 2009-NMCA-038, ¶¶ 24, 26, 30 (discussing the consequences of extraordinary or protracted delay). Defendant's failure to make an affirmative showing of particularized prejudice precludes any chance of success on his speedy trial motion where, as here, the first and second factors weigh only slightly against the State and the assertion-of-right factor weighs only slightly in Defendant's favor. Thus, when we balance all of the required factors, we conclude that Defendant's right to a speedy trial has not been violated.

14

**CONCLUSION**

**{51}**    We affirm Defendant's conviction for trafficking a controlled substance.  We reverse his conviction for conspiracy to traffic within a drug-free school zone and remand for entry of judgment on conspiracy to traffic cocaine and resentencing.

**{52}    IT IS SO ORDERED.**

_____
**JONATHAN B. SUTIN, Judge**

**WE CONCUR:**

_____
**CYNTHIA A. FRY, Chief Judge**

_____
**RODERICK T. KENNEDY, Judge**

**Topic Index for _State v. Wilson_, No. 28,138**

| AE | APPEAL AND ERROR |
|---|---|
| AE-PE | Plain Error |
| AE-PA | Preservation of Issues for Appeal |
| AE-PR | Pro Se Representation on Appeal |
| AE-RA | Record on Appeal |
| AE-SR | Standard of Review |
| AE-SB | Substantial or Sufficient Evidence |

| CT | CONSTITUTIONAL LAW |
|---|---|
| CT-DP | Due Process |
| CT-ST | Speedy Trial |

| CL | CRIMINAL LAW |
|---|---|
| CL-CL | Controlled Substances |
| CL-CS | Conspiracy |
| CA-DZ | Drug-Free School Zone |
| CL-EL | Elements of Offense |

| CA | CRIMINAL PROCEDURE |
|---|---|
| CA-JI | Jury Instructions |
| CA-LO | Lesser Included Offense |
| CA-SE | Substantial or Sufficient Evidence |
| CA-SP | Speedy Trial |
| CA-SY | Stay of Proceedings |

**GV**  **GOVERNMENT**
GV-ES  Education and Schools