# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2019-NMCA-057

Filing Date: June 13, 2019

No. A-1-CA-35470

STATE OF NEW MEXICO,

      Plaintiff-Appellee,

v.

MANUEL FRANCO,

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF EDDY COUNTY**
**Lisa B. Riley, District Judge**

Certiorari Denied, August 8, 2019, No. S-1-SC-37817.  Released for Publication October 29, 2019.

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Kimberly M. Chavez-Cook, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## OPINION

**BOGARDUS, Judge.**

**{1}** Defendant appeals his conviction, following a bench trial, of eight counts of sexual exploitation of children (distribution), contrary to NMSA 1978, Section 30-6A-3(B) (2007, amended 2016),[1] a crime commonly referred to as distribution of child

---

[1]Defendant was also convicted of one count of sexual exploitation of children (possession), contrary to Section 30-6A-3(A). Defendant did not appeal this conviction, and we do not discuss it further.

pornography. On appeal, Defendant advances two arguments: (1) there was insufficient evidence to support his convictions for distribution; and (2) his convictions of multiple counts of distribution violate double jeopardy. Agreeing with Defendant's double jeopardy argument, we remand to the district court to vacate seven of the eight counts of distribution. We otherwise affirm.

**BACKGROUND**

**{2}**     Defendant's charges stem from his use of Ares, a peer-to-peer, file-sharing network, to access child pornography. The evidence at trial established the following. Peer-to-peer, file-sharing networks allow people to share files with others on the same network. Most of these networks, including Ares, operate on the same protocols and principles. As one of the State's witnesses testified, "To get, you have to give." While anything can be shared on these networks, they are also used to access child pornography because the networks, historically, have been subject to little oversight. More recently, law enforcement has developed software to monitor the networks.

**{3}**     Qualified as an expert in peer-to-peer investigations, Special Agent Owen Peña with the New Mexico Internet Crimes Against Children Task Force testified that he uses Roundup, a software program, in the course of his investigations. Within the Roundup program, there are different tools that monitor different networks. The program identifies Internet Protocol (IP) addresses that have files of interest, which are suspected to contain child pornography, saved in their shared folders. The files of interest are identified by hash values,[2] which are equivalent to digital fingerprints in the sense that no two files can have the same hash value. Once an IP address with a shared folder containing a file of interest is identified, the Roundup program automatically attempts to connect to the IP address. Once it connects, the program browses and downloads all files contained in the shared folder. Unlike a typical peer-to-peer program that downloads a file from multiple sources at the same time, the Roundup program used by Agent Peña only downloads from a single source—the identified IP address.

**{4}**     On August 10, 2013, Agent Peña's program identified an IP address that had files of interest in its shared folder, and the program downloaded eight files from the identified IP address. Upon review, Agent Peña confirmed the downloaded files contained child pornography. Agent Peña created a disk containing the downloaded files and all files generated by his program. Agent Peña determined that the physical address associated with the IP address was located in Loving, New Mexico, and that the internet service at that IP address was being paid for by a "Manuel Franco."

**{5}**     Agent Peña contacted Detective Sergeant Blaine Rennie with the Carlsbad Police Department to advise him of the physical address associated with the IP address. Agent Peña also sent Sergeant Rennie the disk he created. Sergeant Rennie confirmed that the identified physical address was within his jurisdiction and that the

---

2Witnesses and trial counsel used the terms "SHA-1 value," "SHA value," and "hash value" interchangeably throughout trial. For clarity and consistency, we use "hash value" for purposes of this opinion.

images appearing on the disk contained child pornography. Sergeant Rennie then obtained a search warrant for the physical address.

**{6}** When law enforcement officers executed the search warrant at the residence associated with the IP address, Defendant and his mother were present. Law enforcement seized multiple items, including a desktop computer, laptop computer, and hard drive, which were sent to the Regional Computer Forensics Lab for analysis.

**{7}** Forensic analysis revealed that more than one of the seized items contained files that matched the hash values provided by Agent Peña. Between 250 and 300 other files that matched hash values for known child pornography were identified on the items taken from the residence. The forensic analysis also identified a folder containing Ares, the peer-to-peer, file-sharing network that Agent Peña's program connected through, as well as a number of other peer-to-peer, file-sharing networks. After the forensic analysis found thousands of images consistent with child pornography, Sergeant Rennie advised that it was not necessary to identify any more images. On several of the seized items, the registered owner was identified as "Manny" and the Windows Registry for one of the items showed "Manny Franco." The defense stipulated that the identified files were child pornography and that the files came from Defendant's computers.

**{8}** During the search pursuant to the warrant, Defendant indicated he believed the search warrant was "for pictures[,]" and agreed to go to the police station to discuss the matter further. At the police station, Defendant expressed familiarity with peer-to-peer networks and reported he had been searching for child pornography for over five years. Defendant admitted to possessing child pornography in his shared file, but denied distributing child pornography. Defendant stated, "But, when I'm on there, when I'm connected, it's not for days or whatever. It's more like an hour or two or whatever. Then I turn it off." Defendant explained, "I'm not trying to distribute, but I'm sharing."

**{9}** Defendant did not testify at trial, but the defense did present a witness qualified as an expert in computer forensics, Thomas Blog. Mr. Blog testified that, in preparing for this matter, he focused on the operation of the Ares program from the user's perspective. Mr. Blog reported that there are two settings that are especially relevant: (1) a default setting to start Ares when Windows starts; and (2) a default setting to not exit Ares when the program's close button is clicked. Mr. Blog explained that although an Ares user can turn off sharing, it does no good because the program automatically defaults back to sharing when it restarts.

**{10}** Defendant argued that the passive act of not changing settings to turn off sharing was insufficient for the fact-finder to conclude, beyond a reasonable doubt, that he "intentionally distributed" child pornography as required by Section 30-6A-3(B).[3] Unpersuaded, the district court found Defendant guilty of all charged counts.

## DISCUSSION

---

[3]All references to Section 30-6A-3 in this opinion are to the 2007 version of the statute unless otherwise noted.

## I. Substantial Evidence Supported Defendant's Convictions for Intentional Distribution of Child Pornography

**{11}** Defendant contends that the evidence presented at trial was insufficient to support his convictions for distribution of child pornography. To the extent that Defendant's argument requires us to interpret the distribution of child pornography statute, "that presents a question of law which is reviewed de novo on appeal." *State v. Chavez*, 2009-NMSC-035, ¶ 10, 146 N.M. 434, 211 P.3d 891. "In interpreting a statute, our primary objective is to give effect to the Legislature's intent." *State v. Trujillo*, 2009-NMSC-012, ¶ 11, 146 N.M. 14, 206 P.3d 125. "In discerning legislative intent, we look first to the language used and the plain meaning of that language." *Id.* "[W]hen a statute contains clear and unambiguous language, we will heed that language and refrain from further statutory interpretation." *Id.* "After reviewing the statutory standard, we apply a substantial evidence standard to review the sufficiency of the evidence at trial." *Chavez*, 2009-NMSC-035, ¶ 11.

**{12}** In relevant part, the distribution of child pornography statute provides that

> [i]t is unlawful for a person to intentionally distribute any obscene visual or print medium depicting any prohibited sexual act or simulation of such an act if that person knows or has reason to know that the obscene medium depicts any prohibited sexual act or simulation of such act and if that person knows or has reason to know that one or more of the participants in that act is a child under eighteen years of age.

Section 30-6A-3(B). In reaching its decision, the district court determined that general criminal intent, *see* UJI 14-141 NMRA, was sufficient to establish that Defendant "intentionally distributed" child pornography under Section 30-6A-3(B).

**{13}** Our appellate courts have not addressed the intent necessary to sustain a conviction for intentional distribution of child pornography under Section 30-6A-3(B). Defendant urges this Court to adopt the analysis found in *State v. Granillo*, 2016-NMCA-094, 384 P.3d 1121, and determine that general criminal intent is insufficient to convict under the statute. The State responds that general criminal intent suffices and that the evidence at trial proved beyond a reasonable doubt that Defendant acted with the requisite intent. For the following reasons, we conclude the analysis in *Granillo* is not applicable to the statute at issue in this case and that general criminal intent is sufficient to convict under Section 30-6A-3(B).

**{14}** In *Granillo*, 2016-NMCA-094, ¶ 1, this Court construed the mens rea for the crime of intentional child abuse by endangerment, as prohibited by NMSA 1978, Section 30-6-1(D)(1) (2009). Under that statute, "[t]he Legislature established three specific mental states by which a person may commit child abuse by endangerment: intentionally, knowingly, and recklessly." *Granillo*, 2016-NMCA-094, ¶ 13. "[The d]efendant was charged only with intentional child abuse by endangerment." *Id.* Noting that the statute did not define "intentionally," this Court described the confusion that has arisen from the

common-law classification of crimes as requiring either "specific intent" or "general intent." *Id.* ¶¶ 14-15. We then looked to the Model Penal Code, which provided an alternative to the common-law dichotomy by defining "four specific culpable states of mind: purposely, knowingly, recklessly, and negligently." *Id.* ¶ 15.

**{15}** This Court reasoned that the tiered mens rea structure of Section 30-6-1(D)(1) "leans away from the common law approach, and instead, is more consistent with the approach of the Model Penal Code." *Granillo*, 2016-NMCA-094, ¶ 15. Under the Model Penal Code, "[a] person acts purposely (intentionally) . . . if it is the person's conscious object to engage in conduct of that nature or to cause such a result." *Id.* ¶ 16 (internal quotation marks and citation omitted). Based on that definition, this Court looked to the social harm targeted by the statute and concluded that the proscribed social harm was not conduct but a result—the endangering of a child. *Id.* ¶ 17. Therefore,

> because the Legislature has provided heightened mens reas in a tiered structure, the definitions of an intentional mental state from the Model Penal Code and other jurisdictions require a conscious objective to cause the proscribed social harm, and the social harm proscribed by the Legislature is the result of endangering a child, we [held] that the mens rea for intentional child abuse by endangerment requires a conscious objective to endanger a child.

*Id.* ¶ 21.

**{16}** Unlike the child abuse by endangerment statute, the Legislature has not provided a tiered mens rea in Section 30-6A-3(B). Therefore, we cannot say that the structure of Section 30-6A-3(B) "leans away from the common law approach." *Granillo*, 2016-NMCA-094, ¶ 15. For that reason, we do not believe *Granillo*'s analysis is controlling here. Rather, under the common law,

> [w]hen the definition of a crime consists of only the description of a particular act, without reference to intent to do a further act or achieve a further consequence, we ask whether the defendant intended to do the proscribed act. This intention is deemed to be general criminal intent. When the definition refers to [the] defendant's intent to do some further act or achieve some additional consequence, the crime is deemed to be one of specific intent.

*State v. Bender*, 1978-NMSC-044, ¶ 7, 91 N.M. 670, 579 P.2d 796 (internal quotation marks and citation omitted). Here, the statute defining the crime of distribution of child pornography only describes a particular act and does not include an intent to do a further act or achieve a further consequence. Therefore, we hold that Section 30-6A-3(B) requires only general criminal intent—"purposely do[ing] an act which the law declares to be a crime." UJI 14-141.

**{17}** Our conclusion is consistent with our analyses of other statutes that also use "intentionally." For example, in *State v. Wilson*, 2010-NMCA-018, ¶¶ 6-13, 147 N.M. 706, 228 P.3d 490, we analyzed the sufficiency of the evidence supporting a conviction under NMSA 1978, Section 30-31-20(B) (2006), which makes it a crime to "intentionally traffic" a controlled substance. We stated, " 'Intentional' refers to general criminal intent, the requirement that a defendant generally intend to commit the act." *Wilson*, 2010-NMCA-018, ¶ 11 (citing UJI 14-141).

**{18}** Similarly, in *State v. Haar*, 1990-NMCA-076, ¶¶ 12-14, 110 N.M. 517, 797 P.2d 306, we analyzed the sufficiency of the evidence supporting a conviction under NMSA 1978, Section 30-15-1 (1963), which defines criminal damage to property as "intentionally damaging any real or personal property of another without the consent of the owner of the property." We concluded that because "the subject statute describes a particular act, without regard to intent to do anything further, all that is required is a general intent to do the proscribed act." *Haar*, 1990-NMCA-076, ¶ 12.

**{19}** We reached the same conclusion in *State v. Romero*, 1985-NMCA-096, ¶¶ 5-20, 103 N.M. 532, 710 P.2d 99, wherein we analyzed NMSA 1978, Section 30-9-14 (1975, amended 1996), which defined indecent exposure as "a person knowingly and intentionally exposing his primary genital area to public view." We noted that "it is not necessary that the exposure be made with the intent that some particular person see it, but only that the exposure be made where it is subject to being viewed by a person or persons which the law seeks to protect from exposure to such lewd conduct." *Romero*, 1985-NMCA-096, ¶ 16.

**{20}** Although Defendant's sole sufficiency argument is premised on the notion that general criminal intent is legally insufficient to support a conviction under Section 30-6A-3(B), which we have rejected, we nevertheless address the sufficiency of the evidence of Defendant's intent. "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citation omitted). "[S]ubstantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion[.]" *State v. Salgado*, 1999-NMSC-008, ¶ 25, 126 N.M. 691, 974 P.2d 661 (internal quotation marks and citation omitted). "In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176.

**{21}** "The element of general criminal intent is satisfied if the [s]tate can demonstrate beyond a reasonable doubt that the accused purposely performed the act in question." *State v. Gonzalez*, 2005-NMCA-031, ¶ 23, 137 N.M. 107, 107 P.3d 547 (alterations, internal quotation marks, and citation omitted); *see* UJI 14-141. Here, the evidence established that Defendant downloaded a peer-to-peer, file-sharing network and acknowledged he was familiar with file-sharing networks. For over five years, Defendant

used such networks to access child pornography. Defendant used a network that required sharing in order to continue accessing files. Defendant kept files containing child pornography in his shared folder, which were accessible to others on the network. Defendant confirmed that he was sharing, but denied that he was distributing. We believe this is a distinction without a difference because Defendant's "sharing" allowed other users of the Ares peer-to-peer, file-sharing network unfettered access to the images contained in his shared folder while he was connected to the network. *See Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/share (last visited Jun. 11, 2019) (defining "share," in relevant part, as "to distribute on the Internet"). Based on the evidence presented at trial, we conclude that the State presented substantial evidence that Defendant acted with the requisite intent.

## II.      Defendant's Multiple Convictions for Distribution Violate Double Jeopardy

**{22}**    The district court convicted Defendant of eight counts of distribution of child pornography, in violation of Section 30-6A-3(B). Defendant argues, and the State concedes, that *State v. Sena*, 2016-NMCA-062, 376 P.3d 887, requires us to vacate all but one count. While we are not bound by the State's concession, *State v. Tapia*, 2015-NMCA-048, ¶ 31, 347 P.3d 738, we accept that concession as supported by controlling precedent.

**{23}**    We review Defendant's double jeopardy claim de novo. *See State v. Bernal*, 2006-NMSC-050, ¶ 6, 140 N.M. 644, 146 P.3d 289 ("A double jeopardy claim is a question of law that we review de novo."). "The constitution protects against both successive prosecutions and multiple punishments for the same offense." *State v. Sena*, 2018-NMCA-037, ¶ 35, 419 P.3d 1240; *see* U.S. Const. amend. V; N.M. Const. art. II, § 15. Defendant raises a unit-of-prosecution claim, "in which an individual is convicted of multiple violations of the same criminal statute." *Bernal*, 2006-NMSC-050, ¶ 7. "For unit-of-prosecution challenges, the only basis for dismissal is proof that a suspect is charged with more counts of the same statutory crime than is statutorily authorized." *Id.* ¶ 13.

**{24}**    In *Sena*, the defendant obtained child pornography images through peer-to-peer software and stored those images on his computer in a shared file that allowed other users of the software to download the images contained therein. 2016-NMCA-062, ¶ 3. Using peer-to-peer software, an officer monitoring child pornography on the internet located and downloaded three separate child pornography images from the defendant's shared folder. *Id.* Almost two weeks later, the officer again used the detection software to download another seven separate child pornography images from the defendant's shared folder. *Id.* The defendant entered a conditional guilty plea to ten counts of distribution of child pornography that allowed him to appeal the issue of whether double jeopardy principles prohibited multiple convictions for distribution of child pornography.

*Id.* ¶ 4. We concluded that the defendant could only be convicted of one count of distribution of child pornography.[4] *Id.* ¶¶ 13-19.

**{25}** The Legislature has yet to amend the distribution of child pornography statute to address the ambiguity in the unit of prosecution we identified in *Sena.* ¶¶ 16-17. Therefore, under the facts and circumstances of this case, we hold that Defendant's eight convictions violate double jeopardy and must be reduced to a single conviction. *See id.* ¶ 19.

**CONCLUSION**

**{26}** We hold that general criminal intent is the mens rea for distribution of child pornography under Section 30-6A-3(B). We remand to the district court with instructions to vacate seven of Defendant's eight convictions for distribution of child pornography.

**{27} IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**M. MONICA ZAMORA, Chief Judge**

**ZACHARY A. IVES, Judge**

---

4This Court noted that it was "specifically reserving the question of[] whether multiple actions undertaken by some other defendant to affirmatively share images of child pornography with a third party may constitute separate acts of sufficient distinctiveness to warrant multiple units of prosecution for the distribution of child pornography[.]" *Id*. ¶ 20. This case does not present such a situation.