This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                        No. A-1-CA-34927

**ORLANDO TRENCILIO,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Brett R. Loveless, District Judge**

Hector H. Balderas, Attorney General
Anita Carlson, Assistant Attorney General
Santa Fe, NM

for Appellee

Law Offices of Jennifer J. Wernersbach, P.C.
Jennifer J. Wernersbach
Albuquerque, NM

for Appellant

## MEMORANDUM OPINION

**VARGAS, Judge.**

**{1}**     Defendant Orlando Trencilio appeals his convictions for aggravated battery against a household member resulting in great bodily harm and aggravated battery resulting in great bodily harm, we affirm. As this is a memorandum opinion, we limit our recitation of the facts to only those necessary for our determination of Defendant's appellate issues.

**BACKGROUND**

**{2}**    Defendant, while embroiled in an argument with his girlfriend at a nightclub where he was working security, stabbed her nineteen times. During the altercation, the girlfriend's niece attempted to come to the girlfriend's aid, at which point Defendant also stabbed the niece.

**{3}**    Defendant was arrested on May 14, 2012. A grand jury indicted Defendant for kidnapping, two counts of attempted first degree murder, and one count of tampering with evidence. Following a five-day jury trial that began on April 13, 2015, a jury convicted Defendant of multiple alternatives to each count for attempted first degree murder.[1] On the first murder count of the indictment, the jury found Defendant guilty of attempted second degree murder, aggravated battery against a household member resulting in great bodily harm, and aggravated battery against a household member with a deadly weapon. On the second murder count, the jury found Defendant guilty of aggravated battery with a deadly weapon or, alternatively, aggravated battery resulting in great bodily harm. Citing double jeopardy concerns, the district court vacated all of Defendant's convictions except the conviction for aggravated battery against a household member resulting in great bodily harm, and aggravated battery resulting in great bodily harm. Defendant appeals.

## DISCUSSION

**{4}**    Defendant argues that: (1) the State violated his right to a speedy trial; (2) the State presented insufficient evidence to support his conviction for aggravated battery resulting in great bodily harm; (3) the district court abused its discretion by failing to excuse a seated juror for cause; (4) the district court erred by refusing his requested jury instruction; and (5) the district court abused its discretion in sentencing him. We address each of Defendant's five claims of error in turn.

## I.    Speedy Trial

**{5}**    New Mexico courts analyze claims of speedy trial violations using the four-factor test articulated by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514 (1972), balancing the length of delay, the reasons for the delay, the defendant's assertion of his speedy trial right, and the actual prejudice to the defendant. *State v. Garza*, 2009-NMSC-038, ¶ 13, 146 N.M. 499, 212 P.3d 387. Speedy trial analysis under *Barker* rejects "inflexible, bright-line approaches to analyzing a speedy trial claim" in favor of an ad hoc consideration of all relevant circumstances in a case. *Garza*, 2009-NMSC-038, ¶ 13. When considering a speedy trial claim, we defer to the district court's factual findings, but review the weighing of the *Barker* factors de novo. *State v. Spearman*, 2012-NMSC-023, ¶ 19, 283 P.3d 272.

## A.    Length of Delay

---

[1] The jury acquitted Defendant of kidnapping and the district court directed a verdict on Defendant's tampering charge.

**{6}** An evaluation of the length of delay in bringing a defendant to trial serves two purposes in a speedy trial analysis. First, it serves as "a triggering mechanism for considering the four *Barker* factors if the delay crosses the threshold of being 'presumptively prejudicial.' " *State v. Serros*, 2016-NMSC-008, ¶ 22, 366 P.3d 1121. Then, if the total time of delay exceeds the "presumptively prejudicial" threshold, it becomes a factor to be weighed under *Barker*. *State v. Deans*, 2019-NMCA-015, ¶ 6, 435 P.3d 1280; *see also Garza*, 2009-NMSC-038, ¶ 42. The presumptively prejudicial threshold is determined by the complexity of the case: twelve months for simple cases, fifteen months for intermediate cases, and eighteen months for complex cases. *Garza*, 2009-NMSC-038, ¶ 2.

**{7}** The district court designated this as a case of intermediate complexity based on the nature and degree of the charges, the evidence, and the number of witnesses. Cases of intermediate complexity involve "numerous or relatively difficult criminal charges and evidentiary issues, numerous witnesses, expert testimony, and scientific evidence." *State v. Wilson*, 2010-NMCA-018, ¶ 24, 147 N.M. 706, 228 P.3d 490 (internal quotation marks and citation omitted). We defer to the district court's finding of complexity when it is "supported by the number of charges and nature of the allegations." *State v. Ochoa*, 2017-NMSC-031, ¶ 15, 406 P.3d 505. The district court's determination of complexity is supported by the charges filed against Defendant—all four were felonies and the indictment included alternative charges to some of the counts. The State's witness list included almost two dozen witnesses and the case involved extensive medical testimony and evidence.

**{8}** The delay in this case exceeded the fifteen-month threshold of presumptive prejudice for cases of intermediate complexity. Defendant's speedy trial right attached when he was arrested on May 14, 2012, *see State v. Moreno*, 2010-NMCA-044, ¶ 10, 148 N.M. 253, 233 P.3d 782 (calculating speedy trial from indictment or arrest and accompanying restraint), and approximately thirty-five months passed between Defendant's arrest and trial.

**{9}** Length of delay under *Barker* is an objective determination, free from any consideration of whether either party is at fault for causing the delay. *Serros*, 2016-NMSC-008, ¶ 26. The greater the delay, the more heavily it will potentially weigh against the State. *Garza*, 2009-NMSC-038, ¶ 24. The nineteen-month delay beyond the fifteen-month threshold for an intermediate complexity case weighs heavily in Defendant's favor. *See State v. Montoya*, 2015-NMCA-056, ¶ 15, 348 P.3d 1057 (concluding that a delay of twelve months beyond the presumptive threshold in a case of intermediate complexity weighs moderately to heavily in the defendant's favor); *see also State v. Moore*, 2016-NMCA-067, ¶ 11, 378 P.3d 552 ("[W]e have stated that a delay approximately twice as long as the threshold weighs heavily against the [s]tate.").

## B. Reason for Delay

**{10}** Because the delay in Defendant's case exceeded the fifteen-month guideline for a case of intermediate complexity, we next consider the reasons for the delay. *See*

*Garza*, 2009-NMSC-038, ¶ 13. Reasons for delay are closely related to the length of delay. *Id.* ¶ 25. There are four types of delay, each carrying different weight under the *Barker* analysis. Intentional delay is that which is aimed at hampering the defense or gaining the state an impermissible advantage at trial, and it is weighted heavily against the state. *Garza*, 2009-NMSC-038, ¶ 25; *State v. Brown*, 2017-NMCA-046, ¶ 18, 396 P.3d 171. Negligent or administrative delay, including delay that exists with an overcrowded court system, weighs lightly against the state, but increases in its weight against the state as the length of the delay increases. *See Garza*, 2009-NMSC-038, ¶ 26 (noting that such delay "falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun" (internal quotation marks and citation omitted)). A valid reason for delay, such as a missing witness, is weighed neutrally, and does not weigh against the state. *Id.* ¶ 27. Finally, delay caused by the defense is weighed against the defendant. *Serros*, 2016-NMSC-008, ¶ 29.

**{11}** Following Defendant's arrest on May 14, 2012, the case appears to have progressed with customary promptness until a pretrial conference occurred on December 13, 2012. The case was then reassigned to a new judge, and another pretrial conference was set for June 20, 2013. The approximately six-month delay that occurred as a result of the reassignment is weighed slightly against the State. *See Garza*, 2009-NMSC-038, ¶ 29 (characterizing judge reassignment as a negligent delay to be weighed against the state).

**{12}** Defense counsel filed a motion to continue the June 20, 2013, pretrial conference, which the district court granted, and it was reset for July 18, 2013. This delay of approximately one month weighs against Defendant. *See Serros*, 2016-NMSC-008, ¶ 29 (recognizing that delay caused by the defense weighs against the defendant); *State v. Fierro*, 2012-NMCA-054, ¶ 40, 278 P.3d 541 (assessing delays caused by defendant's requests for new counsel, and the continuances associated with those requests, against defendant). At the July 18, 2013 pretrial conference, plea negotiations were still ongoing, and Defendant was unable to commit to accepting or rejecting the plea. At that point in the proceedings, plea negotiations had been ongoing since January 2013, and the State had offered more than one iteration of a plea deal. Based on the district court's policy against setting trial while plea negotiations were ongoing, the district court set a change of plea hearing for October 2, 2013. The two and one-half month delay that occurred as a result of ongoing plea negotiations weighs neutrally. *See State v. Maddox*, 2008-NMSC-062, ¶ 24, 145 N.M. 242, 195 P.3d 1254 ("Generally, there is no rule attributing delay resulting from attempted plea negotiations to a specific party and absent some act of bad faith . . . plea negotiations are themselves not a factor to be held against either party" (internal quotation marks and citation omitted)), *abrogated on other grounds by Garza*, 2009-NMSC-038, ¶¶ 46-47; *Brown*, 2017-NMCA-046, ¶ 22 (stating plea negotiations generally should not be weighed against either party in a speedy trial analysis); *see also Wilson*, 2010-NMCA-018, ¶ 33 ("[D]elay from plea negotiations [is] to be weighed against the [s]tate when there exist measureable periods of negotiation. How heavily the delay is to be weighed depends on the length of that

delay *and the amount of delay caused by a defendant in failing to timely respond to a plea offer.*" (emphasis added) (footnote omitted)).

**{13}**   Defendant sought a continuance of the October 2, 2013 change of plea hearing, it was rescheduled, and it took place October 23, 2013. This three week delay weighs against Defendant. *See Serros*, 2016-NMSC-008, ¶ 29. Then, in December, the district court set a trial date of May 5, 2014. But more than six and one-half months passed without any meaningful developments in the case, and the district court attributed the delay to the overcrowded court system—a characterization which neither party disputes. As such, these six and one-half months weigh slightly against the State, as negligent delay. *See Garza*, 2009-NMSC-038, ¶ 26 (weighing negligent delay resulting from overcrowded courts against the state in proportion to the length of the delay).

**{14}**   On May 5, 2014, the day the trial was scheduled to start, Defendant sought a continuance, and the district court, aware of its considerable backlog of cases, warned defense counsel of the scheduling delay that could result from granting a continuance at that time. In response, Defendant waived his speedy trial rights with regard to any delay that occurred as a result of his request. The district court scheduled a docket call for December 1, 2014. In August 2014 new counsel entered his appearance on behalf of Defendant and, on October 23, 2014, filed a motion to dismiss for violation of Defendant's speedy trial rights. The district court did not rule on the motion immediately, and instead held a hearing on December 1, 2014, the day before trial was set to begin, where it orally denied the motion. Because Defendant sought the continuance that ultimately caused this delay, and in doing so waived his speedy trial rights relative to that delay, we weigh the seven-month delay against Defendant. *See Serros*, 2016-NMSC-008, ¶ 29.

**{15}**   On December 2, 2014, the day trial was scheduled to begin, the trial was vacated due to the judge's unavailability. Two months later, the case was reassigned to another judge and Defendant filed a "renewed" motion to dismiss for a speedy trial violation. On March 24, 2015, the district court held an evidentiary hearing on Defendant's motion to dismiss and subsequently denied the motion. Trial commenced on April 13, 2015. The four and one-half month delay from the December 2014 trial date to the newly-scheduled April 2015 trial date amounts to negligent delay, and we accordingly weigh it slightly against the State. *See Garza*, 2009-NMSC-038, ¶ 29 (characterizing unavailability of judges as negligent delay to be weighed against the state).

**{16}**   In sum, approximately nine-and-a-half months of delay in this case weigh neutrally, while approximately nine months weigh against the Defendant and approximately sixteen and one-half months weigh slightly against the State. As a result, this prong of the *Barker* test weighs slightly against the State. *See e.g. State v. Gallegos*, 2016-NMCA-076, ¶¶ 22, 33-34, 387 P.3d 296 (declining to weigh sixteen months and three weeks of neutral delay and fourteen months and three weeks of negligent delay heavily against the state).

**C.      Assertion of Right**

**{17}** Next in our analysis, we consider whether Defendant asserted his right to a speedy trial. *Garza*, 2009-NMSC-038, ¶ 31. "The district court has the discretion to weigh a defendant's assertion based on the circumstances of the case." *Ochoa*, 2017-NMSC-031, ¶ 41. We consider "[t]he frequency and force of the objections" as well as "whether an assertion is purely pro forma." *Id.*; *see also Garza*, 2009-NMSC-038, ¶ 32 ("[W]e accord weight to the frequency and force of the defendant's objections to the delay." (internal quotation marks and citation omitted)).

**{18}** Defendant filed three pro forma demands for speedy trial—one by each new defense counsel who entered an appearance on Defendant's behalf—to which we give little weight. *See State v. Urban*, 2004-NMSC-007, ¶ 16, 135 N.M. 279, 87 P.3d 1061 (acknowledging that "pro forma motions are generally afforded relatively little weight in this analysis"). He also filed two motions to dismiss his indictment on speedy trial grounds that we weigh against the State. *See State v. Lujan*, 2015-NMCA-032, ¶ 18, 345 P.3d 1103 ("New Mexico courts . . . have concluded that a motion to dismiss based on speedy trial grounds is an assertion of the right that is weighed against the [state]."). Defendant filed his first speedy trial motion to dismiss on October 23, 2014, approximately five weeks prior to the scheduled December 2, 2014 trial setting. *See Moreno*, 2010-NMCA-044, ¶ 44 ("[G]enerally, the closer to trial an assertion is made, the less weight it is given."). The district court denied the motion, and Defendant filed a motion for an interlocutory appeal of the district court's decision, which was apparently never heard. Defendant renewed his motion to dismiss on February 6, 2015 when the case was reassigned to a different judge. Defendant's two motions asserting his speedy trial right were, however, mitigated by his three requests for continuance, his waiver of his speedy trial rights during the seven month delay spanning from May 2014 to December 2014, and the motions' temporal proximities to the impending trial dates. *See Ochoa*, 2017-NMSC-031, ¶ 42 (noting that an evaluation of a defendant's assertion of the right "includes accounting for a defendant's actions with regard to the delay").

**{19}** In total, Defendant meaningfully asserted his right twice in a thirty-five month period and was responsible for nine months of delay. These two assertions extended beyond the typical pro forma requests, and his requests for continuance were limited to short time periods, though they ultimately resulted in lengthy delays because of the court's overburdened docket. We therefore conclude that this factor weighs slightly in Defendant's favor.

## D. Prejudice

**{20}** Finally, we consider the prejudice to Defendant resulting from the delay in bringing him to trial. *See Barker*, 407 U.S. at 532. The prejudice to a defendant is "assessed in the light of the interests of defendants which the speedy trial right was designed to protect," *Ochoa*, 2017-NMSC-031, ¶ 48 (internal quotation marks and citations omitted). Those interests include the prevention of oppressive pretrial incarceration, the minimization of anxiety and concern of the accused, and the limitation of the possibility that the defense will be impaired by delay. *Barker*, 407 U.S. at 532. Defendant does not assert that his defense was impaired by pretrial delay, and instead

limits his argument on appeal to claims of oppressive pretrial incarceration, and undue anxiety and concern. We therefore limit our review to those interests.

**{21}** In this instance, we initially note that Defendant was incarcerated for thirty-five months before he was brought to trial. In support of his motion to dismiss on speedy trial grounds, he testified at the evidentiary hearing on his motion that he had two daughters he had not been able to see since he was jailed. He also testified that he lost both his job working security and his home while he was incarcerated. Finally, he testified that he was a little bit nervous in jail because he does not hear anything about his family in Cuba. Defendant offered no other testimony to support his claim that he was prejudiced by the State's failure to bring him to trial sooner.

**{22}** To prevail on a motion to dismiss on speedy trial grounds, a defendant generally, "must show particularized prejudice of the kind against which the speedy trial right is intended to protect[,]" *Garza*, 2009-NMSC-038, ¶ 39. However, a defendant's burden to show prejudice "varies with the length of pretrial incarceration." *Ochoa*, 2017-NMSC-031, ¶ 52. "[L]engthy and onerous pretrial incarceration may render affirmative proof unnecessary to find that the defendant suffered prejudice" and serves as a "counterweight to a defendant's burden of production." *Id.* ¶¶ 54, 57 (presuming "that [the defendant] was prejudiced simply by being continuously incarcerated for two years"); *see Garza*, 2009-NMSC-038, ¶ 39 ("[T]he presumption that pretrial delay has prejudiced the accused intensifies over time." (internal quotation marks and citation omitted)).

**{23}** Notwithstanding that lengthy pretrial incarceration acts as a counterweight to a defendant's obligation to come forward with affirmative proof of prejudice, the *Barker* prejudice factor weighs in the defendant's favor "only where the pretrial incarceration or the anxiety suffered is undue." *Garza*, 2009-NMSC-038, ¶ 35; *see also Spearman*, 2012-NMSC-023, ¶ 39 (declining to conclude, based solely on allegations of counsel, that the defendant suffered undue anxiety); *Montoya*, 2015-NMCA-056, ¶ 25 ("The operative question is whether the anxiety and concern, once proved, has continued for an unacceptably long period."). And, without evidence of a defendant's specific circumstances, a court "can only speculate as to whether such prejudice was *undue*[,]" *Ochoa*, 2017-NMSC-031, ¶ 61, making it difficult to conclude that the defendant's presumed prejudice "prevails over the other three [*Barker*] factors." *Id.* ¶ 64; *see id.* ¶ 60 (noting that "defendant could . . . suffer oppressive pretrial incarceration [in less than two years] or suffer less prejudice during a longer period of incarceration"). Thus, to find a speedy trial violation without affirmative proof of prejudice, "the court must find that the three other *Barker* factors weigh heavily against the [s]tate." *State. v. Samora*, 2016-NMSC-031, ¶ 23, 387 P.3d 230; *see Ochoa*, 2017-NMSC-031, ¶ 55 (acknowledging that a defendant need not always present affirmative proof to support a prejudice claim and parenthetically recognizing that "a defendant need not show prejudice when the other three *Barker* factors weigh strongly in his favor").

**{24}** In this case, while the length of delay weighs heavily in Defendant's favor, the other two factors—reasons for delay and assertion of the right—weigh only slightly in

Defendant's favor. Therefore, we cannot find a speedy trial violation absent affirmative proof of prejudice from Defendant, *see Samora*, 2016-NMSC-031, ¶ 23, and Defendant continues to bear the burden of showing particularized prejudice that "would enable [the c]ourt to weigh this factor more strongly in his favor. In the absence of such proof, this factor does not tip the scale in [the d]efendant's favor." *Ochoa*, 2017-NMSC-031, ¶ 64.

**{25}** Here, Defendant cites the loss of his job, his home, and time with his family in support of his prejudice claim. However, he fails to provide any specific information of his circumstances that would allow us to evaluate the impact the length of his incarceration had on these losses to determine whether his prejudice was oppressive or undue. *See Garza*, 2009-NMSC-038, ¶ 35 (weighing the *Barker* prejudice factor in the defendant's favor "only where the pretrial incarceration or the anxiety suffered is undue"). He did not testify that, but for his lengthy incarceration, he would not have lost his job. Indeed, we note that the incident that gave rise to the charges against him occurred while he was on duty at his security job, raising questions as to whether Defendant would have been permitted to return to work. Further, while Defendant testified that he lost his home, he did not explain the nature of the loss—whether his rental agreement for an apartment was terminated or whether his mortgage for the home he owned was foreclosed upon. Nor did Defendant explain when the loss occurred. If Defendant lost his home during the first fifteen-months of his incarceration, we find it difficult to attribute any claimed prejudice to oppressive or undue incarceration.

**{26}** Finally, Defendant failed to provide any testimony or other evidence of the prejudice or anxiety he claims resulting from his assertion that, due to his incarceration, he does not see his daughters and does not hear anything about his family in Cuba. He failed to explain whether his daughters lived nearby and how frequently he saw them before he was incarcerated. Finally, Defendant failed to explain the frequency and type of contact he had with his family in Cuba and why he had been unable to hear anything about them while he was incarcerated. While Defendant undoubtedly suffered prejudice from these losses, the evidence presented at the hearing failed to establish when the prejudice occurred or that the prejudice was undue and a result of the delay in bringing his case to trial. *See id.* (requiring undue prejudice to satisfy *Barker* prejudice factor). We will not speculate about the circumstances of Defendant's incarceration or the degree of anxiety or concern he suffered as a result of his incarceration and the delay in this case. *See Ochoa*, 2017-NMSC-031, ¶ 60. Because Defendant has made no demonstration of prejudice beyond that experienced by every jailed defendant awaiting trial, we do not weigh this factor in Defendant's favor. *See State v. Thomas*, 2016-NMSC-024, ¶¶ 15-16, 376 P.3d 184 (concluding the defendant failed to demonstrate particularized prejudice that would warrant reversal where he made no argument "as to why his anxiety was beyond that generally suffered by incarcerated defendants").

## E.    Balancing the Factors

**{27}** Though the thirty-five months of delay in this case weigh heavily in Defendant's favor, the other three *Barker* factors do not. The reasons for delay weigh only slightly

against the State, as most was attributable to negligent or administrative delay. The impact of the delay is diminished by nine months of delay that are attributable to Defendant. Further, while Defendant's assertion of his right weighs slightly in his favor, it is tempered by the temporal proximities of the assertions to his trial dates. Finally, Defendant failed to show that any prejudice he suffered was undue. We therefore affirm the district court's denial of Defendant's motion to dismiss for violation of his speedy trial right.

## II.    Sufficiency of the Evidence

**{28}**    Defendant next argues that the evidence was insufficient to support his convictions for aggravated battery against a household member with a deadly weapon and aggravated battery with a deadly weapon because the State did not introduce evidence indicating the type of weapon used.

**{29}**    Although the jury found Defendant guilty of aggravated battery against a household member with a deadly weapon and aggravated battery with a deadly weapon, the district court vacated those convictions on double jeopardy grounds.[2] Thus, with the deadly weapon convictions vacated, Defendant's sufficiency argument is now moot. We therefore decline to address it further. *See Crutchfield v. N.M. Dep't of Taxation & Revenue*, 2005-NMCA-022, ¶ 36, 137 N.M. 26, 106 P.3d 1273 ("A reviewing court generally does not decide academic or moot questions.").

## III.    District Court's Decision Not to Excuse Juror

**{30}**    Defendant argues that the district court should have removed an empaneled juror for jury tampering or juror misconduct. We review for an abuse of discretion. *See State v. Pettigrew*, 1993-NMCA-095, ¶ 15, 116 N.M. 135, 860 P.2d 777 (stating it is "within the discretion of the trial court to replace seated jurors who, prior to the time the jury retires to consider its verdict, become or are found to be unable or disqualified to perform their duties" (internal quotation marks and citations omitted)). A court abuses its discretion if it reaches an erroneous conclusion "that is clearly against the logic and effect of the facts and circumstances" or the "reasonable, probable, and actual deductions to be drawn from such facts and circumstances." *Id.* (internal quotation marks and citation omitted).

**{31}**    At trial, defense counsel notified the district court, outside the presence of the jury, that he had observed an interaction between a seated juror and the prosecutor while the prosecutor was playing a 911 call for the jury. According to defense counsel, the juror said something, the prosecutor smiled, and the juror smiled back in response. The prosecutor explained that having heard some sort of utterance, she turned her attention to the jury, and which point the juror "sort of smiled and dismissed" the prosecutor and the prosecutor, assuming the juror could not hear the recording, turned up the volume. The prosecutor also explained that she believed the juror smiled

---

2Defendant does not challenges the district court's decision to vacate the deadly weapon convictions rather than Defendant's other convictions.

because of "the awkwardness of the interaction[.]" The prosecutor suggested that the juror be questioned regarding the interaction, and defense counsel asked that the district court inquire as to what was said; the district court agreed to question the juror the following day.

**{32}** The district court questioned the juror regarding the interaction by stating, "I did see you smile yesterday, was there any contact with the parties, from your perspective?" The juror responded, "No, not at all." The juror could not remember having mentioned any such interactions to the other jury members. Defense counsel sought to have the juror excused, which the State opposed. The district court, relying on the representations of the prosecutor and the juror's statements, concluded that there was no "evidence before it which would suggest that excusing [the juror] for cause [wa]s appropriate."

**{33}** "The essence of cases involving juror tampering, misconduct, or bias is whether the circumstances unfairly affected the jury's deliberative process and resulted in an unfair jury." *State v. Mann*, 2002-NMSC-001, ¶ 20, 131 N.M. 459, 39 P.3d 124. Nothing in the prosecutor's representations to the district court or the juror's answers suggests the brief interaction in any way affected the jury's deliberations or rendered the trial unfair. We conclude that the district court did not abuse its discretion in denying Defendant's request that the juror be excused.

## IV.  Jury Instructions

**{34}** Defendant argues, pursuant to *State v. Franklin*, 1967-NMSC-151, 78 N.M. 127, 428 P.2d 982, and *State v. Boyer*, 1985-NMCA-029, 103 N.M. 655, 712 P.2d 1, that the district court erred in denying his request that the jury instruction defining a deadly weapon include the phrase "in the manner it was used here" when describing the weapon. We need not address Defendant's argument, as he does not point to anything in the record to demonstrate that he requested such an instruction, thereby preserving the issue for appeal, and has not demonstrated that such an instruction represents an accurate statement of the law. *See State v. Baxendale*, 2016-NMCA-048, ¶ 11, 370 P.3d 813 ("[T]o preserve error on a district court's refusal to give a tendered instruction, the defendant must tender a legally correct statement of the law."). Additionally, because none of Defendant's remaining convictions required proof that a deadly weapon was used, his challenge to the district court's definition of deadly weapon is moot.

## V.  Sentencing

**{35}** Defendant also argues, again pursuant to *Franklin*, and *Boyer*, that the district court improperly disregarded the Department of Corrections' diagnostic evaluation recommending probation and instead sentenced him to incarceration. We review the district court's decision for an abuse of discretion. *State v. Bonilla*, 2000-NMSC-037, ¶ 6, 130 N.M. 1, 15 P.3d 491.

**{36}**     Though the diagnostic evaluation did recommend probation, the district court expressed disappointment in the evaluation's lack of information, particularly regarding Defendant's psyche, what triggered Defendant's actions in this case, and what types of programs could prevent similar acts in the future. The district court noted that although Defendant had no prior criminal history, the "brutality with which this incident was perpetrated certainly justifies a maximum sentence[,]" and further, that its sentencing decision was guided by the "circumstance[s] as a whole."

**{37}**     Defendant's convictions for aggravated battery against a household member with great bodily harm and aggravated battery with great bodily harm each carried a basic sentence of three years. *See* NMSA 1978, § 31-18-15(A)(11), (B) (2007 amended 2018) (setting a basic sentence of three years for a third degree felony); NMSA 1978, Section 30-3-16(C) (2008, amended 2018) (designating aggravated battery against a household member inflicting great bodily harm as a third degree felony); NMSA 1978, Section 30-3-5(C) (1969) (designating aggravated battery inflicting great bodily harm as a third degree felony). As such, the district court's decision to sentence Defendant to three years for each offense was within the range provided for by the sentencing statute. We therefore conclude the district court did not abuse its discretion in sentencing Defendant. *See State v. Cawley*, 1990-NMSC-088, ¶ 26, 110 N.M. 705, 799 P.2d 574 (concluding that sentence within the range afforded by statute does not constitute an abuse of discretion).

**CONCLUSION**

**{38}**     We affirm.

**{39}   IT IS SO ORDERED.**

**JULIE J. VARGAS, Judge**

**WE CONCUR:**

**LINDA M. VANZI, Judge**

**RICHARD C. BOSSON, Judge Pro Tempore**