652 P.2d 1232

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Charles SANCHEZ, Defendant-Appellant.**

**No. 5760.**

Court of Appeals of New Mexico.

Oct. 14, 1982.

Joseph N. Riggs, III, Albuquerque, for defendant-appellant.

Jeff Bingaman, Atty. Gen., Eddie M. Gallegos, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

WALTERS, Chief Judge.

This is an appeal from defendant's conviction on five counts of homicide by vehicle, contrary to § 66–8–101, N.M.S.A. 1978. He asserts two appellate issues in his brief: (A) ineffective assistance of counsel, and (B) erroneous admission of a blood alcohol test result because it lacked a proper foundation. The first issue was not listed in the docketing statement but is fundamental error, if meritorious. *State v. Lucero,* 97 N.M. 346, 639 P.2d 1200 (Ct.App.1981). We affirm.

### (A) INEFFECTIVE ASSISTANCE

Defendant points to six incidents which he claims show ineffective assistance of counsel: (1) failure to move to dismiss because of pre-indictment delay; (2) failure to obtain an independent blood alcohol analysis; (3) failure to effectively voir dire the jury; (4) failure to move to dismiss because the State did not present certain exculpatory evidence to the grand jury; (5) failure to move for a mistrial when the prosecutor elicited that defendant did not testify before the grand jury; and (6) failure to interview a key prosecution witness. None of these specific objections to conduct of the defense trial counsel is analyzed by the State; its brief is a catalog of abstract legal propositions without any attempt to relate the law to the facts of the case on appeal or to the errors alleged.

To reach defendant's claims, we first review what defense counsel did do in the conduct of this trial. The charges arose from a serious automobile accident. Defendant's car, which he was driving and in which his wife and two children were passengers, swerved into the lanes of oncoming traffic and was struck by a sports car carrying two people. Everyone but defendant died; defendant was severely injured. Testimony established that defendant's car left the road on his side of the highway, got back on, and shot immediately across into the lanes into oncoming traffic.

The State showed that defendant had a blood alcohol level of .10% and that he had been driving erratically before the accident, i.e., he had gone off the road twice. State's witnesses explained the degree of impairment likely with a blood alcohol level of .10%. The defendant testified that he had had 6 or 7 beers, was "feeling it," but was not drunk. He said his wife did not drink and when she perceived defendant to be too drunk to drive, she would insist on driving herself. She did not so insist on the day of the accident.

Daniel Gallegos, a deputy sheriff at the time of the incident, followed defendant's car for about two miles before the accident; he testified that defendant was not driving erratically. He described the road on which defendant was driving as dangerously pot-holed, and said that defendant was driving at a safe speed. Gallegos saw the car go off the road to the right, come back on the road and continue into the oncoming traffic. He thought it was an accident; he stopped and went to aid the defendant. He did not smell alcohol, and he would not have cited defendant if he had been on duty and investigating the collision.

Defendant's theory was that whereas he may have been drinking, alcohol was not the cause of the accident. His counsel tried the case consistently with that theory. He vigorously participated in all phases of the trial, exercising the degree of skill and competence demonstrated by reasonably competent defense counsel. *State v. Orona,* 97 N.M. 232, 638 P.2d 1077 (1982).

The record reveals a measure of success from defense counsel's tactics. A pre-trial motion to suppress evidence was granted. During trial, counsel was successful in precluding, on the basis of discovery rules, the testimony of witnesses who had taken another blood sample with results of a .126% blood alcohol content. By his persistent objections, he was initially successful in keeping out the blood alcohol content of .10% until an adequate foundation had been laid. The issue raised on the ultimate admission of this evidence may not have merit; nevertheless, defense counsel adequately preserved it for review. He was successful in excluding one of the accident photos, apparently of the accident victims. The other photos admitted did not picture the victims. He successfully prevented the State's medical examiner from rambling on about the effects of alcohol. After trial, when the court indicated it would sentence defendant to 18 months on each count, counsel successfully moved, citing provisions of the Motor Vehicle Code, to reduce the sentence to one year on each count.

Defense counsel also presented a creditable case. He introduced his theory at voir dire by asking whether the jurors believed that someone must be criminally liable in order to have caused such a fatal collision. His opening statement informed the jury that the dispute in the case would be why the accident happened, and he detailed the evidence which would support defendant's theory of accident. He cross-examined the investigating officer on the condition of the road and its soft shoulder. He cross-examined one of the persons present when defendant's blood was drawn to show that he could not identify defendant. On cross-examination of the pathologist, he obtained an admission that there is a tolerance for error in blood alcohol tests, and that some of the

deaths could have been caused by yet another car striking the sports car. From one witness at the scene, he elicited that the road was dangerous and that the sports car might have been speeding. He presented the defendant and an independent witness in his own case. He made a closing argument explaining that eyewitnesses always see things differently; that his defense witness was closer to the defendant than the State's witnesses; that defendant may have been drinking but was not drunk; and that there was an accident but no criminal liability because defendant's drinking was not the cause of the accident.

The foregoing does not show a lack of effective assistance of defense counsel. It could, instead, be considered as demonstrating skill and competence in keeping with expected professional standards. *Orona, supra.*

We now review defendant's specific allegations of ineffective assistance:

■■ 1. Based on a one-year delay between the time of the accident and the time of the indictment, defendant claims his counsel should have moved to dismiss for pre-indictment delay. A pre-indictment delay argument is unavailing unless there has been a factual showing of actual prejudice to the defense on the merits. *State v. Duran,* 91 N.M. 756, 581 P.2d 19 (1978); *State v. Jojola,* 89 N.M. 489, 553 P.2d 1296 (Ct.App.1976). There is not a shred of such a showing here, nor is there a suggestion or any inferences that such a showing would be possible. Failure to file a non-meritorious motion cannot be declared ineffective assistance.

■ 2. Defendant next claims that counsel's failure to request an independent blood analysis amounts to ineffective assistance. Although the test results admitted into evidence were borderline, this claim overlooks that an independent test, excluded at trial, showed a .126% blood alcohol content. There also was evidence that, as a general rule, blood alcohol content rises .02% for every drink; that it takes an hour to rise to that level; that thereafter it

decreases .02% every hour if drinking stops, and that defendant drank 6 or 7 beers. Based on the general rules, there is no reason to suspect that the .10% result was inaccurate or that another independent test would have been to defendant's advantage. Counsel's foresight may have been better than defendant's hindsight.

■ 3. Because defense counsel did not ask many questions on voir dire, defendant claims this is another instance of ineffective assistance. Questions already had been asked by the judge and the prosecutor. The judge introduced the case and asked about scheduling problems, read the indictment, asked about publicity and whether anyone knew the victims. The judge explained that the procedure was to insure an unbiased and impartial jury. The State voir dired on feelings toward drinking and driving, and the jurors' experience with alcohol-related accidents. It inquired about association with or biases toward its witnesses; about physical handicaps or emotional problems that would interfere with jury service; about prior jury service; religious or moral scruples about alcohol; about the element of lack of intent; about occupations of the jurors that might predispose them one way or the other; how gory photos might affect them; and a few general concluding questions. Defense counsel began his voir dire by saying he would not repeat questions already asked, and then inquired about defense witnesses and whether the jurors believed that defendant was a criminal because he had been charged, or because five people had died. The entire voir dire of the court and the parties gave defense counsel enough information to exercise challenges intelligently, which he did. This complaint does not present an issue of ineffective counsel.

■ 4. The district attorney did not accept the offer of Gallegos, an eye witness, to testify before the grand jury. Defendant argues that because Gallegos would have presented exculpatory evidence, it was prosecutorial misconduct to withhold his evidence from the grand jury, and that misconduct would have supported a motion to dismiss the indictment if counsel had so moved. *Buzbee v. Donnelly,* 96 N.M. 692,

634 P.2d 1244 (1981), defined the kind of direct exculpatory evidence required to be submitted to the grand jury as that which "proves the existence of a fact without inference or presumption." (96 N.M. at 700, 634 P.2d 1244.) The police officer's testimony could not prove the existence of defendant's non-criminal conduct without application of inferences to be drawn, just as the police officer did in stating his opinion, from his observation of defendant's speed and manner of driving, and his non-observation of the smell of alcohol. In conformity with *Buzbee,* the prosecutor was not required to call Gallegos. Consequently, there was no obligation upon counsel, acting as a "reasonably competent defense attorney," *State v. Orona, supra,* to request dismissal of the indictment on that ground.

■ 5. Ineffective assistance is again claimed because trial counsel did not object to the prosecutor's question to defendant: "And you didn't testify before the Grand Jury?" He contends this was a comment on defendant's right to remain silent, and was constitutionally impermissible. Defendant had sought to suggest that the State was withholding evidence from the grand jury in not presenting the testimony of the deputy sheriff; the door was opened, the question was invited. *See State v. Ruffino,* 94 N.M. 500, 612 P.2d 1311 (1980). Additionally, there is some incongruity in the assertion that defendant's right to remain silent was improperly invaded by the question when defendant seemingly abandoned any such right by taking the stand at trial.

■ 6. The final claim of ineffective assistance rests on a comment in the tapes that a hospital witness had not been interviewed by defense counsel. That was the prosecutor's remark, not contradicted by the defense. The witness allegedly not interviewed was Tenner, the technician who tested defendant's blood. Defense counsel's objections to Tenner's evidence was so tenacious that the witness finally had to be taken off the stand. When he returned to testify, defense counsel skillfully objected to the admission of the test results. And having established a tolerance for error in the tests through the medical examiner, he

elicited from Tenner on cross-examination that Tenner had taken no special precautions to reduce that error in this case. The record hardly supports the inference that defense counsel was not prepared to counter this witness's evidence.

In sum, the record demonstrates that defendant had more than effective counsel. It does not support the contentions of defendant to the contrary.

## (B) ADMISSION OF BLOOD TEST RESULTS

Defendant's second claim is that there was a fatal gap in the chain of custody of his blood; that the court consequently erred in admitting into evidence the test results showing a .10% blood alcohol content. The chain in this case is as follows: from defendant to the nurse who drew blood; to the mounted patrol who transported it; to the police officer who transported it; to an unidentified receiving clerk at the lab; to Tenner who tested it. The fact that the receiving clerk or clerks were never identified or never testified is claimed to create a reversible fatality in the proof.

The nurse testified and identified the defendant as the person from whom she drew blood. She explained that after blood is drawn, it is put in official kits having seals that are written on. After she obtained the blood sample, she sealed the tubes and kit and made the appropriate notations. She then gave the kit to a mounted patrol officer who had observed the procedure. The mounted patrol officer corroborated the nurse's testimony and said that he gave the kit to the investigating state police officer. The investigating officer testified that, according to normal procedure, he received the sample from the mounted patrolman and took it to the lab where he gave it to a clerk, Ms. Richardson. The clerk was not called at trial, but the lab technician testified and established that, as a consistent practice at the lab, the receiving clerk takes the samples, logs them in, and brings them up to the technician. The sample was brought up to him by the receiving clerk in this case.

The technician also testified that the sample brought to him by the receiving clerk was identified as being from Charles Sanchez. He explained that the kits are sealed, with writing on the seals, and one cannot alter the samples without breaking the seals. In this case, the seals were intact and he broke the seals. Based on that foundation, the court admitted the evidence under Rule 406, N.M.R.Evid., N.M.S.A. 1978.

Admission of evidence is discretionary with the trial court, and discretion is not abused when the evidence at trial shows by a preponderance of the evidence that the item is what it purports to be. *South v. Lucero,* 92 N.M. 798, 595 P.2d 768 (Ct.App.1979); *State v. Chavez,* 84 N.M. 760, 508 P.2d 30 (Ct.App.1973). The evidence here of the unbroken seals with the writings on them, together with the other foundational testimony, satisfactorily shows that the sample tested by the technician was the same one, unaltered in any fashion, as that taken by the nurse from the defendant. The court accordingly did not err in admitting into evidence the .10% test results.

The jury's verdict and the sentence imposed are affirmed.

IT IS SO ORDERED.

LOPEZ and NEAL, JJ., concur.