This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-40383**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**MARLON HENRY,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**T. Glenn Ellington, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**MEDINA, Judge.**

**{1}** This matter was submitted to this Court on the brief in chief pursuant to this Court's notice of assignment to the general calendar with modified briefing schedule, entered September 30, 2022. After due consideration, we conclude that the briefing submitted to this Court provides no possibility for reversal, such that the case is appropriate for resolution on Track 1.

**{2}** A jury convicted Defendant of multiple counts of criminal sexual penetration and battery. On appeal Defendant contends that his right to a speedy trial was violated,

advances a claim of ineffective assistance of counsel, and challenges the sufficiency of the evidence to support his convictions. For the reasons that follow, we are unpersuaded. We therefore affirm.

**{3}** Because this is an unpublished memorandum opinion written solely for the benefit of the parties and the parties are familiar with the relevant particulars, we omit a background section and proceed directly to the legal challenges. Where appropriate, we reference the factual and procedural history in our analysis.

## DISCUSSION

### I. Speedy Trial

**{4}** In reviewing a speedy trial ruling, "we defer to the district court's factual findings that are supported by substantial evidence, but we independently review the record to determine whether a defendant was denied his speedy trial right and we weigh and balance the *Barker* factors de novo." *State v. Flores*, 2015-NMCA-081, ¶ 4, 355 P.3d 81. "Under the *Barker* framework, courts weigh the conduct of both the prosecution and the defendant under the guidance of four factors: (1) the length of the delay; (2) the reasons for the delay; (3) the timeliness and manner in which the defendant asserted his speedy trial right; and (4) the particular prejudice that the defendant actually suffered." *State v. Smith*, 2016-NMSC-007, ¶ 58, 367 P.3d 420 (internal quotation marks and citation omitted).

### A. Length of the Delay

**{5}** The first step in our analysis is to determine whether the length of pretrial delay is "presumptively prejudicial." *State v. Garza*, 2009-NMSC-038, ¶ 23, 146 N.M. 499, 212 P.3d 387 (internal quotation marks and citation omitted). When the length of delay is presumptively prejudicial, we must proceed to consider all of the *Barker* factors. *Id.* ¶ 21. Moreover, the weight we assign this factor is proportional to the length of the delay— "[a]s the delay lengthens, it weighs increasingly in favor of the accused." *State v. Ochoa*, 2017-NMSC-031, ¶ 14, 406 P.3d 505.

**{6}** Defendant was arrested on October 21, 2018, and the trial culminating in his convictions commenced on August 30, 2021, resulting in a total delay of approximately thirty-four months. [BIC 11, 15] This is well past the presumptive prejudice benchmark, regardless of complexity. *See Flores*, 2015-NMCA-081, ¶ 5 ("A delay of trial of twelve months is presumptively prejudicial in simple cases, fifteen months in intermediate cases, and eighteen months in complex cases."). We therefore proceed to inquire further into the *Barker* factors, and regard the overall delay as weighing heavily against the State. *See, e.g.*, *State v. Deans*, 2019-NMCA-015, ¶¶ 6-9, 435 P.3d 1280 (characterizing a case involving numerous charges and multiple witnesses, and entailing scientific investigation and DNA analysis, as a case of intermediate complexity, and holding that a thirty-month delay weighed heavily against the State). *See generally*

*State v. Moore*, 2016-NMCA-067, ¶ 11, 378 P.3d 552 ("[W]e have stated that a delay approximately twice as long as the threshold weighs heavily against the [s]tate.").

## B.      Reasons for the Delay

**{7}**      "The second *Barker* factor evaluates the reasons for each period of delay and assigns responsibility for each period accordingly." *Deans*, 2019-NMCA-015, ¶ 10. "Our courts have recognized three types of delay that may be attributable to the state and one type attributable to the defense." *State v. Brown*, 2017-NMCA-046, ¶ 18, 396 P.3d 171. Intentional delay, which is "a deliberate attempt to delay prosecution of the case in order to hamper the defense," weighs heavily against the state. *Id.* Negligent or administrative delay also weighs against the State because "it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun," but it does so more lightly than intentional delay. *Id.* (internal quotation marks and citation omitted). "[A]s the length of the delay increases, this type of delay begins to weigh more heavily against the state." *Id.* Delays caused by valid reasons, including periods of time during which the case is moving toward trial with customary promptness, are neutral and do not weigh against the state. *Id.*; *see also State v. Wilson*, 2010-NMCA-018, ¶ 34, 147 N.M. 706, 228 P.3d 490. Finally, any delay caused by the defendant generally weighs against the defendant. *Ochoa*, 2017-NMSC-031, ¶ 18. In light of these principles, we will identify the relevant periods of delay in this case and determine the weight to be given to each.

**{8}**      Throughout the initial twelve-month period between the date of Defendant's arrest on October 21, 2018, and the second status conference on October 16, 2019, the case appears to have proceeded normally. [BIC 12-13] *See, e.g.*, *Deans*, 2019-NMCA-015, ¶ 12 (describing an initial ten-month period during which a case of intermediate complexity proceeded normally, and which weighed neutrally). Although the target trial date was set back at the first status conference, this was by agreement of the parties, and apparently occasioned by DNA testing as well as Defendant's associated need to contact an expert. [BIC 12] We therefore weigh this entire period neutrally. *See Wilson*, 2010-NMCA-018, ¶ 38 (declining to weigh a stipulated extension against the state); *State v. Valencia*, 2010-NMCA-005, ¶ 18, 147 N.M. 432, 224 P.3d 659 ("[P]eriods of time considered 'inevitable' and periods during which the case is moved 'toward trial with customary promptness' are not to be weighed against the state.").

**{9}**      When the second status conference was conducted in late October 2019, both parties indicated that additional time was needed to finish witness interviews. [BIC 13] Defendant filed a stipulated motion to continue, [RP 35] and he waived his speedy trial rights through April 21, 2020. [RP 39] Accordingly, we weigh this six-month period neutrally. *See, e.g.*, *State v. Barela*, 2019-NMCA-005, ¶ 18, 458 P.3d 501 (indicating that the delay associated with a stipulated continuance is neutral and does not weigh against either party), *aff'd*, 2021-NMSC-001, 478 P.3d 875.

**{10}**      A pretrial conference was held on April 14, 2020, at the conclusion of which the first trial was set for September 15, 2020, but did not actually begin until September 28,

2020. [BIC 13-14; RP 45] Although defense counsel apparently indicated that there were "scheduling issues" with an expert witness, [BIC 13] it is not clear that witness availability issues caused the five and one-half month delay. Absent clarity on the reason for the inactivity, we weigh this period of delay slightly against the State. *See, e.g.*, *State v. Castro*, 2017-NMSC-027, ¶ 23, 402 P.3d 688 (holding that "absent any evidence to the contrary," a period of inactivity constituted negligent delay, which weighed only slightly against the state). *See generally Flores*, 2015-NMCA-081, ¶ 8 ("More neutral reasons for delay, such as negligent or administrative delay caused, for example, by overcrowded courts . . . weighs against the state, though less heavily" (omission, internal quotation marks, and citation omitted)).

**{11}** The first trial ended in a mistrial due to COVID-related issues with the jurors. [BIC 14; RP 288] At the ensuing scheduling conference Defendant expressly waived speedy trial until the second trial, which was duly set and ultimately commenced on August 30, 2021. [BIC 14-15] Under the circumstances, we weigh this eleven-month period of delay against the State, albeit slightly. *See, e.g.*, *Castro*, 2017-NMSC-027, ¶¶ 21, 23, (declining to adopt any bright-line rule for speedy trial purposes in cases involving mistrials, indicating that the courts should schedule retrials as soon as their dockets permit, and ultimately holding that a fifteen-month period of inactivity constituted "negligent delay" which was "a neutral reason" which weighed "only slightly against the [s]tate"); *State v. O'Neal*, 2009-NMCA-020, ¶¶ 24, 30, 145 N.M. 604, 203 P.3d 135 (weighing largely unexplained scheduling delays only slightly against the state, where the court's calendar was "horrendous" and the defendant apparently acquiesced). *See generally Ochoa*, 2017-NMSC-031, ¶ 37 ("In the event of a mistrial, district courts must consider and weigh the ensuing developments in accordance with the particularized circumstances of each case."); *State v. Pate*, 2023-NMCA-088, ¶¶ 9, 13, 538 P.3d 450 (declining to categorically assign to either party the weight of delays due to the COVID-19 pandemic, calling for consideration of the circumstances particular to each case, and weighing a period of delay associated with COVID-related rescheduling against the state, but only slightly).

**{12}** In total, approximately eighteen months weigh neutrally, and sixteen and one-half months weigh slightly against the State. Under the circumstances, we conclude that this factor weights against the State, but only slightly. *See, e.g.*, *Castro*, 2017-NMSC-027, ¶ 24 (holding that this factor weighed only slightly against the state where fifteen months of delay due to inactivity, which weighed slightly against the state, and where the remaining seventeen months were justified, the defendant acquiesced, and/or the defendant's own conduct contributed to the delays).

## C.  Assertion of Right

**{13}** Next in our analysis, we consider whether Defendant asserted his right to a speedy trial. *See Garza*, 2009-NMSC-038, ¶ 31. We consider "[t]he frequency and force of the objections" as well as "whether an assertion is purely pro forma." *Ochoa*, 2017-NMSC-031, ¶ 41.

**{14}** Defendant filed a pro forma speedy trial demand at the commencement of the action. [BIC16; RP 10] This is afforded little weight. *See State v. Urban*, 2004-NMSC-007, ¶ 16, 135 N.M. 279, 87 P.3d 1061 (acknowledging that "pro forma motions are generally afforded relatively little weight in this analysis"). Apart from a passing reference in a motion to review conditions of release, [RP 267] Defendant did not renew that demand, or move for relief prior to raising the issue on appeal. Moreover, as previously described, Defendant stipulated to the lion's share of the continuances in this matter. We therefore decline to weigh this factor in Defendant's favor. *See, e.g.*, *Samora*, 2016-NMSC-031, ¶ 16 (arriving at a similar conclusion under analogous circumstances).

## D. Prejudice

**{15}** Finally, we consider the prejudice to Defendant resulting from the delay in bringing him to trial. In this context, prejudice is "assessed in the light of the interests of defendants which the speedy trial right was designed to protect," *Ochoa*, 2017-NMSC-031, ¶ 48 (internal quotation marks and citation omitted). Those interests include the prevention of oppressive pretrial incarceration, the minimization of anxiety and concern of the accused, and the limitation of the possibility that the defense will be impaired by delay. *Id.*

**{16}** Defendant does not assert that his defense was impaired by pretrial delay, or claim undue anxiety and concern. He limits his argument to a claim of oppressive pretrial incarceration, based on his continuous pretrial detention. [BIC 17-18]

**{17}** Because some degree of oppression and anxiety is inherent in every incarceration, we weigh this factor in the defendant's favor only where the pretrial incarceration is undue. *Samora*, 2016-NMSC-031, ¶ 21. Such prejudice must typically be established by means of a particularized showing. *See id.* (explaining that a defendant generally must show particularized prejudice to prevail on a speedy trial claim). Because Defendant offers no proof in the form of affidavits, testimony, or other documentation to support his claim, "we are compelled to assess the prejudice factor with little assistance from [the d]efendant." *Ochoa*, 2017-NMSC-031, ¶ 49. This is a significant limitation. *See Garza*, 2009-NMSC-038, ¶ 35 ("[W]e will not speculate as to the impact of pretrial incarceration on a defendant or the degree of anxiety a defendant suffers.").

**{18}** The lengthy period of pretrial incarceration at issue in this case might be sufficient, in and of itself, to give rise to a presumption of prejudice. *See Ochoa*, 2017-NMSC-031, ¶¶ 54, 57 (holding that when a defendant is "continuously incarcerated for an extended period of time, it requires no speculation to determine that the defendant suffered some prejudice," and accordingly, "lengthy and onerous pretrial incarceration may render affirmative proof unnecessary to find that the defendant suffered prejudice"). However, such presumptive prejudice is not determinative. *Id.* ¶¶ 50, 63. Without evidence of Defendant's specific circumstances, we "can only speculate as to whether such prejudice was *undue*." *Id.* ¶ 61; *see id.* ¶ 60 (noting that the "defendant could . . .

suffer oppressive pretrial incarceration [in less than two years] or suffer less prejudice during a longer period of incarceration").

**{19}**     In this case, the danger of speculation is heightened by indications within the record that Defendant was also being held on a separate criminal matter. [RP 274-75, 277-78] It is not clear that his pretrial incarceration was wholly attributable to the underlying charges; this weakens the claim of prejudice. *See, e.g.*, *Samora*, 2016-NMCA-031, ¶ 22 (rejecting an assertion of prejudice, notwithstanding lengthy pretrial incarceration, where it appeared that the defendant would have been incarcerated on other serious criminal charges that were brought against him a year into the pendency of the case).

**{20}**     "[The d]efendant bore the burden of showing particularized prejudice, which would enable this Court to weigh this factor more strongly in his favor." *Ochoa*, 2017-NMSC-031, ¶ 64 (citation omitted); s*ee, e.g.*, *Brown*, 2017-NMCA-046, ¶ 37 (concluding that a defendant who was unlawfully incarcerated for thirty-three months, and who lost two jobs, and received only three visits from his family due to financial and travel constraints, suffered particularized prejudice). "In the absence of such proof, this factor does not tip the scale in [the d]efendant's favor." *Ochoa*, 2017-NMSC-031, ¶ 64; s*ee also Deans*, 2019-NMCA-015, ¶ 24 (presuming a that a defendant was prejudiced simply by being continuously incarcerated for nearly twenty-eight months, but explaining that "in the absence of proof of particularized prejudice, this presumed prejudice does not weigh strongly in [the d]efendant's favor").

### E.      Balancing the factors

**{21}**     To find a speedy trial violation without affirmative proof of particularized prejudice, "[our Supreme] Court must find that the three other *Barker* factors weigh heavily against the [the s]tate." *Samora*, 2016-NMSC-031, ¶ 23; s*ee also Ochoa*, 2017-NMSC-031, ¶ 55 (acknowledging that a defendant need not always present affirmative proof to support a prejudice claim and parenthetically recognizing that "a defendant need not show prejudice when the other three *Barker* factors weigh strongly in his favor").

**{22}**     In this case, while the length of delay weighs heavily in Defendant's favor, the reasons for delay weigh only slightly in his favor, and he failed to meaningfully assert his speedy trial right. Under such circumstances, we cannot find a speedy trial violation absent affirmative proof of particularized prejudice. *See Samora*, 2016-NMSC-031, ¶ 23. We therefore conclude that Defendant's right to a speedy trial was not violated. *See, e.g.*, *State v. Thomas*, 2016-NMSC-024, ¶ 16, 376 P.3d 184 (rejecting a speedy trial claim in a case involving a twenty-eight month delay entailing continuous pretrial incarceration, where the factors did not weigh heavily in the defendant's favor and the defendant failed to demonstrate particularized prejudice); *Samora*, 2016-NMSC-024, ¶¶ 22-23 (rejecting a speedy trial argument where the extraordinary length of the delay weighed heavily against the state, but the reasons for the delay weighed only slightly against the state, the defendant did not meaningfully assert his speedy trial right, and

the defendant failed to demonstrate particularized prejudice); *Smith*, 2016-NMSC-007, ¶¶ 56-60 (holding that a three-year period of delay, approximately seventeen months of which were neutral or attributable to the defendant and eighteen months of which were caused by the state, did not constitute a speedy trial violation, where the defendant did not meaningfully assert the right and failed to make a particularized showing of prejudice); *Garza*, 2009-NMSC-038, ¶¶ 24, 30, 34, 40 (holding that the defendant's speedy trial rights were not violated when the first three factors weighed in his favor to some degree, but he failed to present evidence of particularized prejudice); *Deans*, 2019-NMCA-015, ¶ 27 (same); *Wilson*, 2010-NMCA-018, ¶ 50 (same).

## II.    Ineffective Assistance of Counsel

**{23}**    A successful ineffective assistance of counsel claim requires that a defendant demonstrate both that counsel erred and that the error prejudiced the defendant. *State v. Arrendondo*, 2012-NMSC-013, ¶ 38, 278 P.3d 517. "An error only occurs if representation falls below an objective standard of reasonableness. If any claimed error can be justified as a trial tactic or strategy, then the error will not be unreasonable." *State v. Bernal*, 2006-NMSC-050, ¶ 32, 140 N.M. 644, 146 P.3d 289 (alteration, internal quotation marks, and citations omitted). A defendant demonstrates that counsel's error caused prejudice when there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (internal quotation marks and citation omitted).

**{24}**    Defendant argues that trial counsel was ineffective because counsel (1) failed to object to the prosecutor's closing argument; (2) failed to investigate properly; (3) advised Defendant not to testify; and (4) failed to promptly move for pretrial release. [BIC 20-21] We evaluate each contention in turn.

**{25}**    Defendant's first argument is premised upon a comment in closing, to which his trial attorney did not object, in which the prosecutor suggested that the police had done more than enough for the jury to find Defendant guilty beyond a reasonable doubt. [BIC 20] Insofar as prosecutors are permitted to comment upon the evidence and to seek guilty verdicts, we perceive little basis for objection. *See generally State v. Reynold*s, 1990-NMCA-122, ¶ 13, 111 N.M. 263, 804 P.2d 1082 ("[T]he prosecutor in final argument may make comments rationally founded on the evidence."); *State v. Ferguson*, 1990-NMCA-117, ¶ 17, 111 N.M. 191, 803 P.2d 676 ("The right of a prosecuting attorney to draw in his argument all legitimate inferences from the evidence authorizes him to assert a belief based on the evidence that the accused is guilty." (citation omitted)). Counsel's failure to object under the circumstances does not constitute ineffective assistance. *See State v. Lamure,* 1992-NMCA-137, ¶ 11, 115 N.M. 61, 846 P.2d 1070 ("While failure to object to improper closing argument may constitute ineffective assistance . . . [where] we find no reversible error in the[] comments . . . it follows that trial counsel's performance did not fall below the standards because he failed to object.").

**{26}** Defendant's contention that trial counsel failed to investigate [BIC 21] is both unsupported by the record and insufficiently developed to supply a basis for a prima facie case of ineffective assistance. *See, e.g., Arrendondo*, 2012-NMSC-013, ¶¶ 38-41 (rejecting a claim of ineffective assistance based upon alleged failure to investigate, where the record was insufficiently developed and prejudice was not established). *See generally State v. Miera*, 2018-NMCA-020, ¶ 34, 413 P.3d 491 ("[A] general claim of failure to investigate is not sufficient to establish a prima facie case if there is no evidence in the record indicating what information would have been discovered." (internal quotation marks and citation omitted)).

**{27}** Defendant's dissatisfaction with counsel's advice not to testify is similarly incapable of supporting a prima facie claim. *See, e.g., State v. Gillihan*, 1973-NMSC-090, ¶ 5, 85 N.M. 514, 514 P.2d 33 (characterizing trial counsel's decision not to allow defendant to testify as tactical, and rejecting this as a basis for a claim of ineffective assistance). *See generally Lytle v. Jordan*, 2001-NMSC-016, ¶ 43, 130 N.M. 198, 22 P.3d 666 (stating that on appeal, we will not second guess the trial strategy and tactics of the defense counsel).

**{28}** Finally, we perceive no merit to Defendant's suggestion that trial counsel was ineffective for failing to seek pretrial release at an earlier juncture. [BIC 21] The district court denied Defendant's request. [RP 291-93] Delay in bringing a meritless motion cannot be regarded as ineffective assistance. *See generally State v. Sanchez*, 1982-NMCA-155, ¶ 10, 98 N.M. 781, 652 P.2d 1232 ("Failure to file a non-meritorious motion cannot be declared ineffective assistance.").

**{29}** In summary, we conclude that Defendant has not presented a prima facie case of ineffective assistance of counsel. However, our conclusion does not preclude Defendant from pursuing habeas corpus proceedings if Defendant is able to adequately develop a record sufficient for review. *See Bernal*, 2006-NMSC-050, ¶ 33 (stating that when the record is inadequate for review, "[r]ather than remand the case to the trial court for further hearings, this Court has a general preference that such claims be brought and resolved through habeas corpus proceedings").

## III.    Sufficiency of the Evidence

**{30}** Finally, Defendant challenges the sufficiency of the evidence to support his convictions. [BIC 23-25]

**{31}** "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Cabezuela*, 2015-NMSC-016, ¶ 14, 350 P.3d 1145 (internal quotation marks and citation omitted). Our review involves a two-step process in which we first "view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. We then "evaluate whether the evidence, so viewed,

supports the verdict beyond a reasonable doubt." *State v. Garcia*, 2016-NMSC-034, ¶ 24, 384 P.3d 1076. We disregard all evidence and inferences that support a different result. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829.

**{32}** In this case, no claim is made that the State failed to supply evidentiary support for any specific element of the any of the offenses. As Defendant tacitly acknowledges, [BIC 24] the victim's testimony supports the convictions. *See generally State v. Soliz*, 1969-NMCA-043, ¶ 8, 80 N.M. 297, 454 P.2d 779 ("As a general rule, the testimony of a single witness is sufficient evidence for a conviction."). Instead, Defendant attacks the victim's credibility. [BIC 24-25] However, the Court "will not invade the jury's province as fact-finder by second-guessing the jury's decision concerning the credibility of witnesses, reweighing the evidence, or substituting its judgment for that of the jury." *State v. Garcia*, 2011-NMSC-003, ¶ 5, 149 N.M. 185, 246 P.3d 1057 (alterations, internal quotation marks, and citation omitted).

**{33}** We understand Defendant to take issues with the lack of eyewitness corroboration. [BIC 24] However, "in a prosecution for criminal sexual penetration, the testimony of the victim need not be corroborated and the lack of corroboration has no bearing on the weight to be given the testimony." *State v. Hunter*, 1984-NMSC-017, ¶ 8, 101 N.M. 5, 677 P.2d 618.

**{34}** Defendant also contends that the DNA evidence can be viewed as consistent with a finding of innocence. [BIC 24] However, "[t]he test is not whether substantial evidence would support an acquittal, but whether substantial evidence supports the verdict actually rendered." *State v. Neal*, 2008-NMCA-008, ¶ 19, 143 N.M. 341, 176 P.3d 330. Moreover, "[c]ontrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject [a d]efendant's version of the facts." *Rojo*, 1999-NMSC-001, ¶ 19.

**{35}** Finally, Defendant suggests that various inconsistencies should be said to render the evidence insubstantial. [BIC 24-25] However, the alleged inconsistencies were for the jury to resolve at trial. *See State v. Ortiz-Burciaga*, 1999-NMCA-146, ¶ 22, 128 N.M. 382, 993 P.2d 96 (holding that it is the "exclusive province of the jury to resolve factual inconsistencies in testimony" (internal quotation marks and citation omitted)). "This Court will not substitute its determination for that of the jury." *Hunter*, 1984-NMSC-017, ¶ 12. We therefore reject Defendant's challenge to the sufficiency of the evidence.

**CONCLUSION**

**{36}** For the foregoing reasons, we affirm.

**{37}** **IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**MEGAN P. DUFFY, Judge**